(No. 22643.—

The People of the State of Illinois, Defendant in Error, *vs.* Charles W. Jung, Plaintiff in Error.

*Opinion filed December 19, 1934.*

J. FRED GILSTER, and PHILIP G. LISTEMAN, for plaintiff in error.

OTTO KERNER, Attorney General, WALTER J. SCHUWERK, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

A jury in the circuit court of Randolph county found Charles W. Jung, the plaintiff in error, (herein referred to as the defendant,) guilty of forgery. His motion for a new trial was overruled and judgment was entered upon the verdict. The case comes here for review by writ of error.

The prosecuting witness was Charles Jung, an uncle of the defendant. During the months of December, 1925, and January, 1926, the defendant was a guard at the Southern Illinois Penitentiary, at Menard. His uncle, Charles Jung, with his wife and two sons, Joe and Will, lived on a farm near Evansville. A third son, Charles, was visiting his parents during the time embracing the salient circumstances

of the case. The defendant was charged with forging the signature of Charles Jung to a promissory note for $4350 payable to Joe Siegfried. In December, 1925, the defendant was negotiating for the purchase of a house in Red Bud and needed some outside financial assistance. Siegfried offered to loan the defendant $4350 on his note provided Charles Jung signed the same as security. A short time afterwards the defendant delivered to Siegfried a note for $4350 bearing the signatures of the defendant and his wife and the purported signature of Charles Jung. Siegfried gave the defendant a check for that amount and it was used in the purchase of the property. For several years the defendant paid the interest on this note. In 1930 he failed to make the interest payment and Siegfried brought suit against the signers of the note. Charles Jung then denied that he had signed the note for $4350, but claimed that the note he had signed for the defendant, payable to Siegfried, was only in the sum of $2250.

The defendant urges that an impartial consideration of all the evidence will divulge a grave doubt of his guilt—so much so, in fact, that one can only conclude that the jury did not base its verdict upon a calm and deliberate consideration of all the evidence. This point compels us to set forth and discuss the evidence in some detail—a task which can be shortened by first stating the material matters over which there is no dispute. It is undisputed that defendant made two visits to the home of Charles Jung in an endeavor to obtain his signature to a note payable to Siegfried. On the second visit Charles Jung agreed to, and did, sign a note as security for the defendant, payable to Siegfried. The condition of the signing was that the defendant would secure Charles Jung in the undertaking by giving to him a mortgage on the defendant's property in Red Bud. Charles Jung wanted the mortgage prepared by his personal attorney. This was done, and the mortgage was signed by the defendant and his wife in the office

of that attorney. Later, the mortgage was delivered to Charles Jung.

There is an irreconcilable conflict in the evidence whether Charles Jung signed a note for $2250 or one for $4350. Nearly nine years had elapsed between the signing and the trial. Charles Jung testified that he signed a note for the lesser amount. In this he is supported by the testimony of his wife and his sons Will and Joe. All three of these witnesses stated that they actually saw the note when it was signed by Jung. The two sons were just as positive as their father that the defendant on his first visit gave the amount of the intended note as $2250. The evidence coming from the uncle's family is that the defendant first called at the Jung home on December 26, 1925, and that his second visit was on January 7, 1926. The defendant testified that his first visit to the Jung home occurred on December 19, 1925, and the second on the 21st of the same month.

The briefs of the People and the defendant each discuss at great length the alleged discrepancies in the testimony of the opposing witnesses. All were testifying to remote events, their family relationship was divided, and personal interest was undoubtedly a factor. Other evidential facts and circumstances consequently must be thoroughly examined in an endeavor to find whether the jury correctly appraised the testimony of the contending parties. The defendant introduced in evidence a record book of the penitentiary covering the months of December, 1925, and January, 1926. In this book was daily recorded, as a customary and official procedure, the presence or absence of employees at the penitentiary. At the time this record was compiled no civil or criminal action in which Charles Jung and the defendant were interested was pending or contemplated. This book therefore stands unimpeached as an impartial record of the dates when the defendant was at or away from his place of duty. It shows that he was absent from the penitentiary on December 17, 18, 19, 20,

21, 22 and 23, 1925, and that he was present and on duty at the penitentiary on January 6 and 7, 1926. The testimony of the defendant that he was taking a vacation on those days in December is therefore not controverted. The record book, as interpreted by its custodian at the penitentiary, shows that defendant was absent with pay on those days. The defendant subpœnaed Dan Eckert and Armin Nolla to appear as his witnesses. Both men were ill and could not appear and the defendant then filed his motion for a continuance. In his affidavit the defendant recited what the two men would testify to if present. The State's attorney admitted that the two absentees would testify to the matters as set forth in the affidavit. The continuance was denied and the affidavit was read in evidence. The two men, the affidavit stated, would testify as follows: That they were guards at the penitentiary and personally there from December 23, 1925, to January 15, 1926, with the exception of December 29 and January 4 and 10; that they slept in the same room with the defendant, had the same kind of work and saw him at all his meals during those days with the exception of the three days noted, and that he did not leave the penitentiary on the days or nights of December 26 or January 7.

An unexplained circumstance is the failure of the People to introduce in evidence the mortgage which was given to Charles Jung by the defendant. There is the testimony of the defendant that he and his wife signed such a mortgage, but the record discloses nothing as to its amount or contents. The attorney told the defendant that the amount of the mortgage was $2250. Even if this testimony is undisputed it is not conclusive as the instrument is not in evidence, nor is there secondary evidence thereof resulting from its loss or destruction. The instrument could have recited that it was security to the extent of $2250 on the $4350 note. So far as the records show, this instrument was last within the control of the attorney for Jung, and

his failure to produce it was a serious break in the chain of evidence. No inferences should be drawn that Charles Jung did not sign a note for $4350 simply because his attorney told the defendant that the mortgage, signed without the amount filled in, was for $2250.

Little is shown by the evidence for the People dealing with a comparison of the disputed signature with the genuine signature of Charles Jung. C. R. Torrence, a banker in Chester for eleven years, was not acquainted personally with the signature of Charles Jung. Torrence admitted that he was not an expert in matters of disputed handwriting and did not pose as one, basing his qualifications solely upon his banking experience. After comparing the purported signature on the $4350 note with the genuine signatures appearing upon fifteen checks introduced in evidence, it was his opinion that the signature "Charles Jung" on the note and those on the checks were not the same. The People introduced no more evidence attacking the signature. The defendant first placed upon the stand John M. Trendley, of East St. Louis, who qualified as an expert examiner of disputed handwriting. This witness had followed the work for thirty-nine years, appearing as an expert witness in over 300 cases in the probate, circuit and Federal courts of many States. After examining the note and check signature "Charles Jung" under a magnifying glass, he said that the signature on the note and the signature appearing upon each of the fifteen checks were made by the same person. A. F. Rathert, a bank cashier in Red Bud, testified that for years he had occasion to observe the genuineness of signatures. He also said he was personally acquainted with the signature of Charles Jung. After examining the note and checks with the aid of a magnifying glass, he stated that in his opinion the name "Charles Jung" on the note and the names on the checks were written by the same person. W. R. Preston, a sixty-nine-year-old banker of Baldwin, was not personally acquainted with the

signature of Charles Jung, but testified that in the course of his long banking experience he had observed and examined many signatures, and after an examination of the note and checks it was his opinion that the same person had signed "Charles Jung" upon all sixteen of the instruments.

It is evident that the jury in arriving at the verdict chose to believe the testimony of Charles Jung and the members of his immediate family in their unanimous statements that Jung had only signed a note for $2250. Their testimony concerning many of the other circumstances attendant upon the signing of the note was not so unanimous or certain. The ability of these interested witnesses to remember the amount of the note and the fact that it contained only three lines, and their failure to be equally specific about the other attendant circumstances, is noteworthy, but it apparently escaped the jury's notice. Equally evident is the failure of the jury to give adequate consideration and weight to the unimpeached and impartial evidence contained in the time-book of the penitentiary. It may be observed that the testimony of Eckert and Nolla set forth in the affidavit of the defendant also stands uncontradicted and is entitled to some weight. Moreover, we are constrained to believe that the jury completely ignored the testimony of the witnesses for the defendant respecting the genuineness of the signature of Charles Jung upon the note. The People did not produce one witness outside of the immediate family of Charles Jung who was personally acquainted with his signature. A. F. Rathert, who testified for the defendant, was only a lay witness. In addition to being distinterested he was the only witness who was personally acquainted with Jung's signature. The handwriting testimony of the People's witness C. R. Torrence was that of a layman. The defendant had the testimony of W. R. Preston, which was equal in force to that of Torrence. In addition, the defendant had, or should have had, the benefit of the testimony of the handwriting expert, John M. Trendley, quali-

fied by long experience in forgery and other cases involving disputed signatures. It is true that Trendley was an imported, paid, expert witness. This may have influenced the jury adversely, but it certainly afforded no ground for completely ignoring his testimony, as they must have done to reach their verdict. The determination of the genuineness of disputed handwriting calls for the application of highly specialized knowledge. This type of knowledge is not acquired by laymen without specific study of the subject and cannot be acquired from the ordinary experiences of life. The testimonial value of this special knowledge has long been recognized by the courts and should not have been cast aside without serious consideration by the jury. A defendant, be he guilty or innocent, is entitled, under the law, to have his case placed before an impartial jury, who will fairly examine all of the evidence before them and arrive at their verdict with calmness and deliberation. We have repeatedly declared that while the law has committed to the jury the determination of the weight and credit to be given to the testimony and authorizes a verdict of guilty when a consideration of all the credible evidence warrants the belief, beyond a reasonable doubt, that the defendant is guilty, nevertheless the law also makes it the duty of this court, in reviewing a judgment of conviction, to consider the evidence, and if we believe the conviction is based upon unsatisfactory evidence and there is grave doubt of its sufficiency to establish guilt, the judgment should be reversed. (*People* v. *Elmore,* 318 Ill. 276; *People* v. *Royals,* 356 id. 628; *People* v. *Cohen,* 357 id. 198.) In our judgment the jurors in this case failed to fairly and dispassionately perform their duty. Their verdict reflects passion and prejudice. The evidence here does not show the guilt of the defendant beyond a reasonable doubt. The judgment of the circuit court of Randolph county must therefore be reversed and the cause remanded for a new trial.

In case of a re-trial, a statement in connection with the charge that the defense exhibits in the time-book from the penitentiary had been altered or tampered with may be advisable. Without fully discussing the matter, we must say that this charge has not been substantiated by material contained in the record. Furthermore, the defendant tendered checks in evidence as standards by which to compare the questioned signature. The tendered exhibits were checks admittedly bearing the genuine signature of Charles Jung. They were so related in point of time to the making of the note as to be admissible. A point raised by defendant as to the admissibility of his wife's testimony has been decided adversely to his contention in *People* v. *Kendall,* 357 Ill. 448.

Other points have been noted, but need not be considered because of the reversal of the case upon more important grounds.

*Reversed and remanded.*