(No. 22879.—⬛)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANNICE CIRALSKY, Plaintiff in Error.

*Opinion filed June 14, 1935.*

MARTIN O. WEISBROD, HARRY J. BUSCH, and SAMUEL A. HOFFMAN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Annice Ciralsky and Edward J. Nix were convicted of forgery in the criminal court of Cook county. Nix was granted a new trial. The defendant Ciralsky was sentenced

to the Illinois State Reformatory for Women at Dwight for a term of from one to fourteen years. She prosecutes this writ of error to reverse the judgment against her.

The indictment contains six counts. A *nolle prosequi* was entered to the last four. The first count, in substance, charges the forgery on April 19, 1933, with intent to defraud the State of Illinois of a certain order for the delivery of groceries to Aron Williams and Anna Williams, purporting to have been issued by the Cook County Bureau of Public Welfare and to bear on its face a receipt for such groceries signed by Anna Williams; that the county of Cook, through its bureau of public welfare, was coöperating with the Illinois Emergency Relief Commission in disbursing money and funds of the State for the relief of residents of the county who were unemployed or in destitute and necessitous circumstances, and that orders issued by the bureau, when bearing the signed receipt of the person to whom issued, became obligations of the State, payable out of the funds and money of the State. The second count charges the uttering of the instrument set forth in the first count with intent to defraud the State.

The Cook County Bureau of Public Welfare, in coöperation with the Illinois Emergency Relief Commission, maintained relief stations in various parts of the county. One of them was known as the Oakwood district, and was located at 5059 Vincennes avenue, on the South Side in Chicago. A supervisor, assistant supervisor, head relief clerk, registrar and financial clerk were the officials in charge, and the clerical staff, numbering about eighty persons, was comprised of case workers, checkers, order typists and "will call clerks." Each pending application for relief was kept in the file department. If approved the case was sent to the relief department with a relief card. When a case record was sent in for the first order the budget clerk filled out a budget sheet showing its amount. A disbursing order was filled out in quadruplicate from memoranda ap-

pearing on the relief cards, with the name and address of the relief client, the case number, the name of the grocer who was directed to fill the order, the amount, the number of ration orders and the amount of milk supplied. An entry on the relief card was made for each order issued, showing the date and the number of the disbursing order. The order was checked with the relief card by a checker, who placed his signature on the order. It was then mailed to the relief client or sent to the "will call" department. If an order sent to that department was not called for within five days it was canceled and a notation to that effect marked on the relief card. A copy of the disbursing order was retained at the station. When groceries were delivered to a relief client he signed a receipt therefor printed on the order. The merchant took up the order and presented it, with his statement, for payment. Several orders could be grouped with a statement. Each order was required to have attached to it an itemized bill on the merchant's bill-head of the goods furnished. The claims were sent to the filing department, where the duplicate copy of the order was matched with the original. They were then checked in detail by the auditing department. If no errors appeared, a sheet listing the orders and their amounts was attached. The orders were stamped, passed by the accountant in charge and by the director of the unemployment relief service. They were then forwarded to the Illinois Emergency Relief Commission, where a voucher was prepared and sent to the State Auditor, by whom a check was drawn to the order of the merchant.

Edward J. Nix was head relief clerk at the Oakwood relief station from October, 1932, until about June, 1933. As such he had supervision of writing and dispensing all disbursing orders and of the employees performing those duties. He had power to make corrections in orders, such as changing the name of a grocer if a relief client moved from the district or if for another sufficient reason a change

was necessary. In January and February, 1933, Aron Williams and his wife, Anna Williams, who resided in the Oakwood district, obtained relief through the Oakwood station. During those two months they obtained groceries at a store conducted by the Great Atlantic and Pacific Tea Company. About March 1, 1933, Williams returned to work with the International Harvester Company, where he had previously been employed. The grocery store of A. Bush, at 4413 South State street, was operated by his daughter, Annice Ciralsky, the defendant. He had been in California for several years. The disbursing order on which the indictment is based was introduced in evidence. It is numbered 327802, dated March 23, 1933, and purports to be signed by R. D. Potter, authorized representative. The order is for the delivery to "Williams, Aron Anna," $5.04 in groceries. It was originally directed to "Nat'l Tea Co." That name is canceled and "A. Bush—4416 S. State St." is substituted, followed by the signature, "Edw. J. Nix." In the lower left-hand corner of the order is printed, "I hereby certify that I have received goods in the amount listed above," followed by a signature, "Anna Williams." An itemized statement on a bill-head of A. Bush purporting to show the groceries delivered on the order was admitted in evidence. Anna Williams testified that the signature to the receipt was not hers, and both she and her husband testified that they received no relief in March, 1933, or thereafter, and that they never received any groceries from A. Bush. A list of disbursing orders purporting to have been issued in favor of A. Bush aggregating $311.62, and a warrant issued by the State Auditor to A. Bush in that amount, dated May 3, 1933, bearing the endorsement "A. Bush," were admitted in evidence, together with the Williams relief card.

The defendant's motion to quash the indictment was properly denied. It is not necessary to allege that the instrument forged, if genuine, would create a legal liability,

but the essential elements of the crime are a false making of an instrument in writing apparently capable of effecting a fraud, together with a fraudulent intent. (*People* v. *Adams*, 300 Ill. 20.) Judicial notice is had of the creation by the General Assembly of the Illinois Emergency Relief Commission and of its duties. Taken in connection with the disbursing order shown *in hæc verba* in the indictment there were sufficient extrinsic allegations to show that the instrument was susceptible of being used to defraud the State. *People* v. *Routson*, 354 Ill. 573.

It is necessary to consider only one other question—that is, whether the evidence is sufficient to sustain the verdict. The testimony relied upon to connect the defendant with the crime charged was entirely circumstantial, and counsel for the defendant argue that it did not constitute legal proof because it did not show that she forged, or was in possession of and issued, a forged instrument. The evidence shows that a disbursing order directed to A. Bush, with the receipt part signed with the name of a former relief client, was issued but that the writing was not a genuine signature. A check was made in the office of the Auditor of Public Accounts for disbursing orders directed to A. Bush, including the one bearing the false signature upon the receipt part of the order. The check was indorsed with the name "A. Bush," and it was shown that the store of A. Bush was conducted by the defendant, the daughter of the man bearing that name. It was not shown that the defendant wrote any of the names on the disbursing order, including the name "Anna Williams" on the receipt part of that instrument, nor that she received the check or money due thereon. There was an attempt to show an intent by fifteen other disbursing orders containing the name of A. Bush as the grocer to whom the orders were directed. The orders were introducd in evidence, and there was testimony that the receipts, which were parts of the order sheets, bore forged signatures of relief clients,

most of whom had not received the groceries mentioned in the respective orders. With respect to the order upon which the indictment was based, and the fifteen orders, with the accompanying testimony, there was no evidence that the defendant forged or possessed and issued a forged order. The most that the testimony shows concerning the particular charge in the indictment or that relating to other orders or receipts, is, that a forgery was committed in which the name of the store managed by the defendant appeared and that a relief client's name was forged to a receipt. The evidence does not show whether or not the defendant conducted the business without assistance or there were also clerks in the store. While intent to defraud may be presumed or inferred from proved facts and circumstances surrounding the transaction, (*People* v. *Beacham,* 358 Ill. 373; *People* v. *Katz,* 356 id. 440; *People* v. *Meyer,* 289 id. 184;) the intent, like the proof of the forgery or issuing of the forged instrument, must be connected with the person charged or there is a failure of proof.

The People sought to introduce evidence of conversations between the defendant and the successor of Edward J. Nix as head relief clerk with respect to dividing the receipts upon grocery orders directed to the grocery store which she managed without the delivery of any groceries upon the orders, which conversations were subsequent to the date of the commission of the offense charged. The evidence was excluded by the trial court. The statements of a defendant as to other instruments of the same kind, supposed to have been uttered by him, are not admissible in evidence. (*Anson* v. *People,* 148 Ill. 494; *Fox* v. *People,* 95 id. 71; 1 Lewis' Greenleaf on Evidence, sec. 52; 3 id. sec. 111, p. 143.) The statements alleged to have been made by the defendant here were not with reference to other forged instruments but of an attempt to conspire to obtain money on grocery orders without delivering groceries. Obviously, the rule requiring the exclusion of statements of

an accused with respect to collateral matters would be applicable to the statements said to have been made by the defendant in this case. (*Schultz* v. *People,* 210 Ill. 196; *Bishop* v. *People,* 194 id. 365; *Turley* v. *People,* 188 id. 628; *Janzen* v. *People,* 159 id. 440.) The fact that a relief client's name was forged upon a form of receipt a part of a disbursing order for groceries to be supplied by a store which the defendant managed may be a. suspicious circumstance. Circumstances of suspicion, merely, without more conclusive evidence, even though the party offers no explanation of them, are not sufficient proof of guilt. (Wills on Circumstantial Evidence,· (5th Eng. ed. with American notes,) p. 82.) While the defendant was the proper person to receive the proceeds of a disbursing order upon which groceries had been delivered to a relief client using her store, it does not follow that she received the proceeds of a forged order or that she forged or uttered a forged order. In the absence of proof that the defendant forged the name on the receipt of the disbursing order, or any other name on the order, or issued the forged instrument, the circumstance of her connection with the store is not sufficient proof of her guilt without more connecting facts and circumstances. (*People* v. *Grove,* 356 Ill. 246.) All the circumstances shown are consistent with her innocence. Where there is grave doubt of the sufficiency of the competent evidence to establish guilt a judgment of conviction cannot be permitted to stand. (*People* v. *Jung,* 358 Ill. 488; *People* v. *Royals,* 356 id. 628.) Upon the essential fact of proving the defendant committed the forgery or issued the forged instrument upon which the indictment is based there was an entire failure of proof.

The judgment of the criminal court is reversed and the cause is remanded. *Reversed and remanded.*