TERRITORY OF OKLAHOMA V. JOHN DELANA AND CHARLES W. BEACOM.

1. CERTIFICATE—*Juror.* A certificate issued by the clerk of a district court setting forth that a juror has attended a certain number of days and is entitled to a certain number of dollars as his pay therefor, is unauthorized, absolutely void, and of no effect in law.

2. SAME—*Forgery Of—Indictment.* An indictment setting forth the forgery of a juror's certificate issued by the clerk of a district court, does not state a public offense, and a demurrer thereto should be sustained.

3. FORGERY. It is a general rule that if an instrument is void or invalid upon its face, and cannot be made good by averment, the crime of forgery cannot be predicated upon it.

4. SAME—*When Committed.* The law is that forgery may be committed of any instrument of writing, which, if genuine, would or might operate as the foundation of another man's liability or the evidence of his rights. (*Shannon v. State,* 109 Ind. 407.)

*Appeal from the District Court of Canadian County.*

On the 22d day of December, 1894, there was returned into the district court of Canadian county, by the grand jury thereof, a certain indictment against John Delana and Charles W. Beacom, in words and figures as follows, to-wit:

"INDICTMENT No. 299.

"*Territory of Oklahoma v. John Delana and Charles W. Beacom.*

"Of the November term of the district court of the Second judicial district of the Territory of Oklahoma, within and for Canadian county, in said Territory, in the year of our Lord one thousand eight hundred and ninety-four, the grand jurors, chosen, selected and sworn, in and for the county of Canadian, in the name and by the authority of the Territory of Oklahoma, upon their oaths present: That John Delana and Charles W. Beacom, late of the county aforesaid, on the 10th day of November, in the year of our Lord one thousand eight hundred and ninety-four, in the county of Canadian, and Territory of Oklahoma aforesaid, having then and there in their possession a certain juror's certificate, issued under the authority of the Laws of the Territory of Oklahoma aforesaid, by Benj. F. Hegler, clerk of the district court in and for the Second judicial district of the aforesaid Territory of Oklahoma, and issued at the city of Kingfisher, in the county of Kingfisher, in the Second judicial district and Territory of Oklahoma aforesaid, and signed by Benj. F. Hegler, clerk district court, by W. R. Benson, deputy, which said juror's certificate was issued as aforesaid to one C. R. Grinstead, in payment for two days' service as a petit juror at the district court, in said county of Kingfisher, and territory aforesaid, and was evidence of a debt of four dollars in money owing by said county of Kingfisher to C. R. Grinstead for his two days' service as a petit juror aforesaid, and the said juror's certificate, issued as aforesaid, was, when so issued, in the words and figures following, that is to say:

"No. 16                                                $4.00

"The Territory of Oklahoma, Second Judicial District, County of Kingfisher, ss.   February term, 1894.

"I. Benj. F. Hegler, clerk of the district court in and for said county, do hereby certify that C. R. Grinstead was duly summoned as a petit juror on the petit jury venire, and that he has been in attendance on said court at the February term thereof, A. D. 1894,

two days, and he necessarily traveled ....... miles and is entitled to $4 as pay for such services.

"Witness my hand and the seal of said court affixed ·at my office in Kingfisher, Territory of Oklahoma, this 16th day of February, A. D. 1894.

"[SEAL.]                           BENJ. F. HEGLER,
                                    "Clerk District Court.

"By W. R. BENSON, Deputy.

"And said juror's certificate when so issued as aforesaid, had printed in words and figures on the back thereof, the following endorsements and blank form of transfer and assignment, that is to say:

"Certificate of jurors attendance.   District court ..............county, Territory of Oklahoma.   To.... ..........term, 189......   Filed this ........ .... day of............ ... A. D. 189 ... ,   ... .... ..... county clerk.   Amount certified $ ..............   Amount allowed $ ........ .....this .... ........ day of.... ........ A. D. 189 ... .

        " ....................,Chairman Board Commissioners.

"Warrant No. ...............

"Territory of Oklahoma,.... . .... .county, ss.

"For value received, I hereby assign, sell and transfer and make over to ..............all my right, title and interest in and to the within certificate and the fees therein described, and I authorize said .... ........ to receive county order issued therefor, and receipt the same in my name when the same shall have been issued.   .... .....

            "Oklahoma Territory,:... ... .....189 ... .

"And said jurors certificate after being so issued as aforesaid, was transferred and assigned by the said C. R. Grinstead in words  and figures written and printed on the back thereof as follows, that is to say:

"Territory of Oklahoma,  ............. county, ss.

"For value received I hereby sell, assign, transfer and make over to Brown & Delana, Chas. W. Beacom, of El Reno, O. T., all my right, title and interest in and to the within certificate and the fees therein described, and I authorize said Chas. W. Beacom to receive the county order issued therefor and receipt the same in my name when the same shall have been issued.                          C. R. GRINSTEAD.

"Kingfisher, O. T.. Feb. 10, 1894.

"And the said John Delana and Chas. W. Beacom, then and there, that is to say, in the county of Canadian and Territory of Oklahoma aforesaid, on the 10th day of November, in the year of our Lord one thousand eight hundred and ninety-four, unlawfully and feloniously, with intent to defraud the aforesaid county of Kingfisher, and the parties to the grand jurors unknown, did falsely forge, counterfeit and alter the aforesaid juror's certificate then and there falsely forging, counterfeiting and altering the four dollars written in figures at the head of said certificate, which said four dollars, written in figures, represented the amount of money said certificate was issued for, and by so altering, counterfeiting and forging the four dollars written in figures at the head of said certificate, the same became fourteen dollars in figures, and by then and there falsely forging, counterfeiting and altering the figure 2, written in the body of said certificate, which figure two represented the number of days' attendance as a juror said certificate was issued for, and by so altering, counterfeiting and forging the figure 2 written in the body of said certificate the said figure 2 became a figure 7, and by reason of the said John Delana and Chas. W. Beacom then and there falsely forging, counterfeiting and altering as above set forth the aforesaid juror's certificate issued as aforesaid for four dollars for two days' attendance as a juror, the said juror's certificate did import, signify and become a juror's certificate issued as aforesaid for fourteen dollars for seven days' attendance as a juror, which said falsely forged, counterfeited and altered juror's certificate is in words and figures following, that is to say:

"No. 16                                    $14.

"The Territory of Oklahoma, Second Judicial District, County of Kingfisher, ss.    February Term, 1894.

"I, Benj. F. Hegler, clerk of the district court in and for said county, do hereby certify that C. R. Grinstead was duly summoned as a juror on the petit jury venire, and that he has been in attendance on said court at the February term thereof, A. D. 1894, seven days, and he necessarily traveled — miles and is entitled to $14 as pay for such services.

"Witness my hand and the seal of said court affixed at my office in Kingfisher, Territory of Oklahoma, this 16th day of February, A. D., 1894.

"[SEAL.]             BENJ. F. HEGLER,

"Clerk District Court.

"By W. R. BENSON, Deputy.

"And the said falsely forged, counterfeited and altered juror's certificate, is endorsed in blank as follows, that is to say:

"Certificate of juror's attendance, district court, ... ... ..........county, Territory of Oklahoma, to .... .... ...., ........ ..... term, 189.... Filed this ....... day of ... ........., A. D. 189..... .... ......... .., County Clerk. Amount certified, $ ... ..... ..... . Amount allowed, $ .............. . This ....... day of.... ...., A. D. 189.... ... ....., Chairman Board County Commissioners. Warrant No. ........ .

"And the said falsely forged, counterfeited and altered juror's certificate has the following transfer and assignment by the aforesaid C. R. Grinstead on the back thereof, that is to say:

"Territory of Oklahoma, ......... ... county, ss:

"For value received, I hereby sell, assign, transfer and make over to Brown & Delana, Chas. W. Beacom, El Reno, O. T., all my right, title and interest in and to the within certificate and the fees therein described, and I authorize said Chas. W. Beacom to receive the county order issued therefor and receipt the same in my name, when the same shall have been issued.

"C. R. GRINSTEAD.

"Kingfisher, O. T., Feb. 10, 1894.

"Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the Territory of Oklahoma.

"A. J. JENNINGS, County Attorney.

"Endorsed as follows:

"299. Indictment. District court, Canadian county. Doc. .... .... No. .... .... . Page. *Territory of Oklahoma v. John Delana, Charles W. Beacom.* Indicted for forgery. A true bill. T. F. Addington, Foreman of the Grand Jury. Filed in open court December 22, 1894. Benj. F. Hegler, Clerk, by Ed M. Hegler, Deputy. Wit-

37

nesses: J. H. McGee, J. W. Moffett, C. R. Grinstead, B. F. Hegler. A. J. Jennings, County Attorney. Bail $1,000 each. Jno. H. Burford, Judge."

On the 4th day of March, 1895, the defendants appeared by their attorneys and filed a demurrer to said indictment, which, omitting caption, reads as follows:

"Comes now John Delana, defendant in said cause, and for demurrer to the indictment therein, severally avers:

"1. That it does not substantially conform to the requirements of ch. 68 of the Statutes of Oklahoma, in this, to-wit:

(a) It is not entitled in a court having authority to receive it.

"(b) It does not state the name of the court to which it is presented.

"2. The facts stated therein do not constitute a public offense.

"JOHN I. DILLE, JOHN SCHMOOK, JR.,
"Attorneys for Defendants."

On the 6th day of March, 1895, the court, Chief Justice Dale presiding by assignment of the supreme court, sustained the demurrer to the indictment and held the defendant to await the action of the next grand jury. To this ruling the counsel for the territory excepted and appealed the cause to this court. Affirmed.

*C. A. Galbraith, Attorney General, Thos. R. Reid, County Attorney,* and *A. J. Jennings,* for the territory.

*John I. Dille* and *John Schmook, Jr.,* for appellee.

The opinion of the court was delivered by

SCOTT, J.: Counsel for the territory contend that the court below committed error in sustaining the defendant's demurrer to the indictment. The prime question is, does the indictment state a public offense?

Did the facts set out in the indictment amount in law to forgery? The determination of these questions will decide the case.

Maxwell, in his work on Criminal Procedure, holds that:

"Forgery may be committed by any writing which, if genuine, would form the basis of another man's liability or evidence of his right."

Is the instrument or certificate set out in the indictment capable of being forged or counterfeited? Is it a certificate or statement provided and required by law? Does it give to the juror or witness holding it any greater right than he would possess if he did not have it? Could the claim of the juror or witness be a valid claim against the county if no certificate were ever issued? It appears that there is no statutory authority for the issuance of the certificate set out in the indictment. It seems to be the voluntary act of the clerk of the court; given perhaps to enable the witness or juror to know what his fees amount to, or maybe, as suggested by counsel, to enable the party to negotiate it. It is not binding upon the county, and the commissioners are not bound, nor should they accept it for any more than an open account. If the party presenting it and claiming a bill against the county swears to it the same as any other claim is subscribed to, it might be evidence that the party owns the claim The county treasurer would not recognize the certificate of the clerk as authority for him to pay money out of the county treasury, and the board of county commissioners would not recognize it as binding upon the county. It is not a contract between the county and the person set forth to have rendered certain services. It is not a contract between the clerk and the witness or juror. It is unauthorized by law; issued without authority and cannot possibly be a thing of any value. If it has been used as a negotia-

ble instrument, parties taking it must be presumed to have known that there was no law for its issuance.

In the case of *Shannon v. State*, 109 Indiana 407, and reported in the 10 N. E. 87, the court uses the following language:

"It is clear that such instrument was not one of those specifically mentioned in our statute defining the crime of forgery. But the law is that forgery may be committed of any instrument of writing, which if genuine, would or might operate as the foundation of another man's liability, or the evidence of his rights."

In the case of *King v. State*, 27 Texas Appeals, 567, and also reported in 11 Am. St. Rep. 203, the defendant was charged with attempting to pass as true a forged instrument in writing as follows:

"Weighed on Fairbank's Standard scales, Dec. 1, 1888.
"Load of—one load of corn.
"From Sam Simpson
"To Patty and Brockington
"On Gross 2,513 lbs.
"Off Tare 1,011 lbs.

"Fees net 1,502 lbs.
"Net bus.    Weigher.    (Space for figuring on back side.)"

A motion to quash the indictment was filed and overruled by the court, and the defendant appealed to the court of appeals. The opinion states that:

"The assistant attorney general confesses error, and admits that 'upon the face of the indictment the instrument (declared on) does not create any liability upon the part of anyone to be responsible for anything. (2). There are no innuendo averments showing the facts or reasons why said instrument created such liability;' nor are these requisite explanations set out that make the alleged forged instrument a forged instrument in law.

"If a writing is so incomplete in form as to leave an apparent uncertainty in law whether it is valid or not,

a simple charge of forging it fraudulently, etc., does not show an offense, but the indictment must set out such extrinsic facts as will enable the court to see that, if it were genuine, it would be valid. (2 Bishop Crim. Law, 7th Ed. § 545.) And when an instrument is incomplete on its face, so that, as it stands, it cannot be the basis of any legal liability, then, to make it technically the subject of forgery, the indictment must aver such facts as will invest the instrument with legal force."

It seems that the case just cited is properly analogous to the one under consideration. The statement in the Texas case might as properly be called the subject of legal forgery as the one at bar. The statement made by King in the case just cited does not attempt to confer any rights upon anyone, but is a simple statement without any liability. In the case at bar the clerk makes a certificate and states that a party has attended as a juror for a certain number of days and is entitled to so many dollars. It is of no value except as a memorandum. No rights are conferred by it which would not exist if it had never been put into existence.

In the case of the *People v. Shall*, 9 Cowen 778, the defendant was convicted of forging an instrument which, as set forth in the indictment, was as follows:

"Three months after date I promise to pay Sebastian I. Shall, or bearer, the sum of three dollars, in shoemaking, at cash price, the work to be done at his dwelling house, near Simon Vrooman, in Minden, August 24, 1826.       DAVID W. HOUGHTAILING."

A motion was made to arrest the judgment. Mr. Justice Cowan, in considering the case, says:

"It is scarcely necessary to observe that the instrument set out in this indictment is not a promissory note within the Statute of Anne, and it is agreed that the writing does not come within any of the statutes of forgery, it being payable neither in money nor goods, but labor. The indictment is, therefore, based

upon the common law. Another defect renders it utterly void, of itself, as a common law contract. It expresses no value received, nor any consideration whatever, and no action could be maintained upon it, if genuine, as a special agreement to perform labor, without averring and proving a consideration, dehors the instrument. * * * The question presented is, whether the fraudulent making of a writing, void in itself, and so appearing in the indictment, be the subject of a prosecution for forgery."

The learned judge then discusses a number of cases on the question of forgery, and continues :

"In the principal case, I have shown that the paper forged, if genuine, would be a mere nullity for any purpose; nor, to my mind, could it be made good by any possible averment. It could not be made the foundation of liability, like the letter of credit. It does not come within any of the cases sustaining indictments; but to me appears to be directly within the cases cited, holding that an instrument purporting to be void on its face, and not shown to be operative by averment, if genuine, is not the subject of forgery. How is it possible in the nature of things, that it should be otherwise? 'Void things are as no things.' Was it ever heard of, that the forgery of a *nudum pactum*, a thing which could not be declared on or enforced in any way, is yet indictable? It is the forgery of a shadow."

Again in conclusion the learned justice says:

"I agree that a man, ignorant of the technical requisites of a special agreement, might be imposed upon by the paper in question. This remark probably embraces a majority of the community in which we live; and most likely the very parties named in the false instrument. In this view, no doubt, the deed of which the defendant stands convicted, involves all the moral guilt of forgery. He believed that he had succeeded in fabricating what purported to be a valid promissory note. But legal forgery cannot be made out by imputing a possible or even actual ignorance of the law to the person intended to be defrauded. However dark may be the moral hue of a

transaction, courts of justice can only act upon legal crime, upon criminal breaches of perfect legal obligations. Had this paper been used as a token, and thus made the medium of actual fraud by the defendant, he would be punishable as for a cheat. The instrument might, in that relative sense, become the subject of an indictment. It here stands alone, and we do not think that legal forgery can be predicated of such writing, for the reasons fully established by authority, and principle, that it is not, on the face of the indictment, of any apparent legal effect."

The Colorado court of appeals, in the case of *Raymond v. People*, reported in the 30 Pac. Rep. 504, by a majority of the court, holds an instrument in the following language not to be capable of forgery:

"Auditor's Office, City of Denver, No. E 1974.

"Treasurer of the City of Denver: Pay to Joslin & Son. or order, three dollars and fifty cents ($3.50), out of any money in the treasury not otherwise appropriated, for   .. ... and charge the same to the miscellaneous fund; and this shall be your voucher.

"By order of the City Council of date Jul. 31, 1890.
      "Issued Aug. 1, 1890.
           "Countersigned by A. A. KNIGHT, City Auditor.
" [CITY SEAL.]            WOLFE LONDONER, Mayor.
      "Attest:   W. H. MILBURN, City Clerk."

This warrant was raised from $3.50 to $303.50. The defendant was indicted and convicted and brought error to the court of appeals. Mr. Justice Bissell dissented from the opinion of the court reversing the lower court, but it was upon the theory that the warrant was not void. The charter of Denver contains the following provision:

" No money shall be paid out by the city treasurer for any purpose, except upon the warrants drawn upon him by order of the city council and signed by the mayor, countersigned and registered by the auditor, and attested by the clerk; and every such warrant shall show upon its face the date of its issue. the date of the order of the city council, to whom and for what purpose issued, and from what fund payable."

Under this section, counsel for the appellant contended that the instrument was absolutely void, of no legal effect, because the warrant did not specify for what it was issued, and, therefore, not indictable. The majority of the court, by Richmond, P. J., reversed the decision of the lower court, and held that the warrant was void and that a prosecution for forgery would not lie. The opinion is very lengthy and reviews the entire field of English and American authority upon the subject. In the dissenting opinion of Justice Bissell, the following language is found:

''If the paper forged is not absolutely worthless for all legal purposes, forgery may be committed. * * * The conclusion is irresistible that the writing must be absolutely void and worthless for all purposes, not to be the subject of forgery.''

The case of State v. Evans, decided by the supreme court of Montana and reported in the 39 Pac. Rep. p. 850, was a criminal prosecution against Evans for the forgery of the following instrument or writing:

''Bozeman, December 25, '94. Schumacher, Esq.: Please pay to the order of W. L. Evans the amount of twenty dollars ($20) and charge to him at my office. Johnson & McCarthy.''

The defendant was convicted. The court in considering this case followed the authorities cited herein, and held that the instrument was not the subject of forgery. The court held that the instrument, if genuine, could do no possible damage, even if accepted; that Johnson & McCarty were not made responsible and Evans could accomplish as much without the instrument as with it. Johnson & McCarthy did not ask to have the amount charged to them, but to Evans. The court says:

''The order, as it appeared on its face, would not accomplish the advancing of the money by Schumacher to Evans on the credit of Johnson & McCarthy. Schumacher would as readily have advanced it without the

order as with it. There were no extrinsic facts alleged
in the information to show that the instrument was
available for the fraudulent purpose alleged in the
information."

See also *People v. Head,*1 Idaho 531; *Rembert v. State,*
53 Ala. 467; *Roode v. State,* 25 Am. Rep. 475, 5 Neb. 174;
*Arnold v. Cost,* 22 Am. Dec. 315 (note p. 315); *Waterman
v. People,* 67 Ill. 92; 3 Greenleaf Ev. p. 103; *Commission-
ers v. Ray,* 3 Gray 441; 2 Bishop (8th ed.) §§ 533 and
538; Maxwell on Criminal Proc. 147–149; *Hendricks v.
State,* 8 Am. St. Rep. 463 (note p. 466).

The supreme court of Indiana in *Garmire v. State,* re-
ported in 4 N. E. at p. 55, states the rule unquestion-
ably to be that the indictment must show that the
instrument is one having some legal effect, but it is not
necessary that it should be shown to be a perfect
instrument.

In *Rollins v. State,* 22 Tex. App. 548; 58 Am. Rep. 659,
the court says:

"It is an established rule that a written instrument,
to be the subject of indictment for forgery, must be
such as would be valid, if genuine, for the purpose
intended. If void or invalid upon its face, and it can-
not be made good by averment, the crime of forgery
cannot be predicated upon it. In other words, if the
instrument is absolutely void upon its face, it cannot
be made the subject of forgery; but if the legality be
doubtful, and by proper allegations its legality is
capable of being shown to the court, it is a subject of
forgery." ( *Anderson v. State,* 20 Tex. App. 595; *State
v. Briggs,* 34 Vt. 503.)

The supreme court of Ohio in the case of *Clarke v.
State,* reported in 8 Ohio State, 630, uses the following
language in discussing the question:

"An indictment for forgery must not only allege the
false making or alteration of a writing specified in the
statute, with the intent to defraud some named person
or body corporate, but it must also appear on the face
of the indictment, that the fabricated writing, either

of itself or in connection with the extrinsic facts averred, is such, that if genuine, it would be valid in the law to prejudice the rights of the person or body corporate thus named."

We now come to the consideration of the authorities cited by the appellant. The first case brought to the notice of the court is that of *State v. Woodward*, 20th Iowa, 541, decided by Mr. Justice Dillon. We have a very high regard for the opinion of Judge Dillon, and believe that the case cited by counsel fails to sustain the theory advanced by them, but on the contrary sustains the theory of the court in this case. The quotations made by counsel do not fairly state the law of the case as announced in that decision. Counsel in their brief use the following language:

"Mr. Justice Dillon, in the case of *State v. Woodward*, 20 Iowa 541, defines forgery to be 'the making or alteration of any writing with a fraudulent intent, whereby another may be prejudiced. It is not essential that any person should be actually injured.'"

The case just cited was one where the defendant was charged with changing two receipts, and the court holds in the very first part of its decision, after a discussion of the subject, that the two receipts, if genuine, would found a liability. The court says:

"It is plain that the receipts in question, if genuine, would found a liability, or be evidence of a liability, on the part of Armstrong."

Counsel have altogether a mistaken view of this case, as a careful review of it will disclose.

Counsel also cite 22 Am. Dec. 306. We presume counsel refer solely to the note to the decision of *Arnold v. Cost*, as the case itself does not bear out the theory stated, and the note itself is not a correct statement of the law, nor the law as laid down in the text books and cases cited.

Counsel for appellant cite *State v. Johnson*, 26 Iowa, 407, also reported in 96 Am. Dec. 158, and say:

"We understand the general rule to be, that if an instrument is void on its face it cannot be the subject of forgery, still this rule must be taken with this limitation, 'when the instrument does not appear to have any legal validity or show that another might be injured by it, but extrinsic facts exist by which the holder of the paper might be enabled to defraud another, then the offense is complete and an indictment avering the extrinsic facts disclosing its capacity to deceive and defraud would be supported.'"

We fail to understand why counsel cite this authority or suggest this rule, for surely they cannot say that any extrinsic facts are pleaded which would take the instrument contained in the indictment, out of the general rule, viz., that a void instrument is not the subject of forgery. We do not think, however, that the rule stated by counsel is correct or that the citation is a correct or fair statement of the decision. The court expressly says :

"True, it is, there can be no forgery if the paper is invalid on its face, for it can then have no legal tendency to effect a fraud. If its invalidity, however, is to be made out by extrinsic facts, it may be legally capable of effecting a fraud, and the party making the same be punished."

We do not think the various cases cited by counsel for appellant are in point, or state the law correctly. Some of them do not appear to be well considered, and others do not support counsel's theory.

We believe, from a careful review of all the authorities, that the instrument set out in the indictment is not the subject of forgery, as it is absolutely void. No extrinsic facts are set forth to take it out of the general rule, and we believe that the ruling of the court in sustaining the demurrer was correct. The judgment of the lower court will be affirmed with costs.

By the court: It is so ordered.

Dale, C. J., not sitting, having presided below; all the other Justices concurring.