## MOSS v. ARNOLD.

No. A.-9408.  Jan. 12, 1938.
(75 P. 2d 491.)

344

346

348

352

354

356

Gomer Smith, Edward M. Box, David Tant, Glen Morris, and W. N. Stokes, for petitioner.

Lewis R. Morris, Co. Atty., Walter Marlin, Asst. Co. Atty., Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

DOYLE, J. (after stating the facts as above). This is an original proceeding instituted in this court, seeking to prohibit the respondent as a judge of the district court of Oklahoma county from taking and exercising further jurisdiction over the petitioner and the subject-matter

involved, wherein petitioner is charged with contempt of court.

On the filing of the petition it was presented to the court; all parties present in person and by counsel. Respondent demurred to the petition upon the ground that the petition does not state facts sufficient to entitle petitioner to a writ of prohibition. After oral argument it was stipulated that pending the decision of the court further proceedings on the contempt charge would be suspended.

The history of the case, gathered from the facts pleaded, is substantially as follows:

It appears that one M. H. Curnutt was on trial in the district court of Oklahoma county upon information charging forgery in the second degree, in that he did commit the crime of uttering a forged requisition on the county welfare board of Oklahoma county, purporting to have been issued to Willie McCullough, No. 2038, in the sum of $10, knowing that the name of Willie McCullough appearing on said requisition as claimant, owner, and recipient, was forged; that said requisition was filed with Helen Nix, county clerk of Oklahoma county, who believing said requisition to be true and genuine, issued voucher No. 193, which was duly signed by William F. Vahlberg, county treasurer of Oklahoma county, which was cashed by said defendant.

It appears that this, along with ten other requisitions, was filed with said county clerk, and for which the county treasurer issued a voucher for $102 to the defendant M. H. Curnutt in payment of said requisitions.

In the citation to show cause why he should not be adjudged to be in contempt of court and punished there-

for, it is charged that in the presence of the court, the jury in the jury box in said courtroom deliberating on a verdict in the case of State v. M. H. Curnutt, William L. Moss, a spectator, openly communicated with Juror Lee N. Katz, a member of said jury aforesaid, in direct contempt of said court.

In order that a full understanding of the questions presented may be had, a few preliminary observations may well be stated.

Writs of prohibition are not mentioned in the statutes of this state. The authorities all agree that prohibition is a common-law writ.

"Prohibition" is commonly defined, substantially, as a writ to prevent the exercise by a tribunal possessing judicial powers of jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance. Blackstone defines it as a writ "directed to the judge and parties of a suit in any inferior court, commanding them to cease from the prosecution thereof, upon suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court." 3 Bl. Comm. 112.

In 22 R.C.L. 8, it is said:

"In the absence of a statute expressly permitting it, the general rule is that prohibition, being an extraordinary writ, cannot be resorted to when ordinary and usual remedies provided by law are adequate and available. Accordingly if a complete remedy lies by appeal, writ of error, writ of review, certiorari, injunction, mandamus, motion for change of venue, or in any other manner, the writ should be denied."

In 50 Corpus Juris, p. 676, it is said:

"That prohibition does not lie to correct or restrict errors or irregularities of a tribunal which is acting within its jurisdiction, although improperly in the exercise of that jurisdiction."

The Supreme Court of this state has announced this rule in a number of cases.

In the case of Busey v. Crump, District Judge, 108 Okla. 73, 233 Pac. 714, the Supreme Court held:

"In an original proceeding in this court for a writ of prohibition, though the petition may allege errors of law, or other reversible errors committed by the trial court in the proceeding below, this court is without jurisdiction to reverse or modify the judgment of the trial court, unless the case be brought here on appeal."

And see MacThwaite Oil & Gas Company v. Bolen, 77 Okla. 155, 187 Pac. 221; Harrah v. Oldfield, 68 Okla. 30, 171 Pac. 333.

In State v. Stanfield, 11 Okla. Cr. 147, 143 Pac. 519, we said:

"The writ of prohibition is that process by which an appellate court prevents an inferior court from usurping or exercising unauthorized jurisdiction."

In the case of Corley v. Adair County Court, 10 Okla. Cr. 104, 134 Pac. 835, it is said:

"Appellate courts should not interfere by writ of prohibition with the trial of causes where a trial court has jurisdiction of the subject-matter, and the person of the defendant; but such trial court should be permitted to proceed to judgment, and any irregularities should only be reviewed upon appeal."

In the case at bar it is contended by counsel for petitioner that:

"The district court had no jurisdiction in the criminal

action in which the alleged contempt was committed, for the reason that the purported requisition was void on its face and not the subject of forgery, and further, the information wholly fails to state facts sufficient to charge forgery in the second degree, or any other crime under the laws of Oklahoma."

The question thus presented is: Does the information charge an offense? From the view which we take of the law, it is not necessary to discuss this question in reaching a decision in this case. However, the question has been elaborately briefed, and we are asked by both parties to pass upon the question.

It is insisted on the part of petitioner that the facts charged in the information do not constitute any offense under the statute, for the following reasons: That said purported requisition is not the subject of forgery under the laws of Oklahoma; that the same was not filed as provided by law and regulations, and was not properly signed by any officer as required by law to sign such instrument, nor was the same ever properly approved by any board or officer required by law to approve such instrument; and that the name of the secretary of the county welfare board as shown thereon is wholly unauthorized by law, and that said requisition does not bear the seal of the county clerk of Oklahoma county as is by law required.

The information wherein M. H. Curnutt is charged with the crime of uttering a forged instrument is based on Penal Code, § 2125, 21 Okla. St. Ann. § 1577, which provides that:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, *or engagement for the payment of money absolutely, or upon*

*any contingency, knowing the same to be forged or counter-feited, \* \* \* is guilty of* forgery in the second degree."

It goes without saying that the writ of prohibition cannot be substituted for an appeal for the correction of errors, irregularities, or deficiencies.

The general rule is that the writ may not be used to test the sufficiency of an information; but this is subject to qualification, recognized in almost every jurisdiction, that where the accusation is not merely defective or technically insufficient, nor merely demurrable or subject to a motion to quash or set aside, but is elementary and fundamentally defective in substance, so that it charges a crime in no manner or form, the accused is entitled to have a writ of prohibition issue, or where it appears that the information charges an offense not within the jurisdiction of the trial court.

The entire requisition is copied into the information charging the uttering of the same as a false and forged instrument, with intent to defraud. It is an instrument of writing of no doubtful significance. It falls within the designation of "or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency." The instrument shows that it is of a character capable of effecting a fraud. Taken in connection with the receipt and the affidavit of the defendant Curnutt, shown thereon, there are sufficient extrinsic allegations to show that the instrument was susceptible of being used to defraud the county welfare board of Oklahoma county.

Counsel for petitioner cite the case of Territory v. Delana, 3 Okla. 573, 41 Pac. 618, and contend that the rule in the Delana Case was reaffirmed in the case of Johnson v. State, 57 Okla. Cr. 220, 46 Pac. 2d 964, 965.

In the Johnson Case this court, referring to the Delana Case said:

"It is assumed by counsel for petitioner, in argument, upon the principle announced in Territory v. Delana, 3 Okla. 573, 41 Pac. 618, [supra], * * * that this conviction is invalid because the instrument which petitioner is charged with uttering was not legally susceptible of forgery.

"In the Delana Case, the Supreme Court of the Territory held,

" 'An indictment setting forth the forgery of a juror's certificate issued by the clerk of a district court does not state a public offense, and a demurrer thereto should be sustained,' and that, 'It is a general rule that if an instrument is void or invalid upon its face, and cannot be made good by averment, the crime of forgery cannot be predicated upon it.' * * *

"An uttering of a forged instrument, under the statute (Penal Code, section 2125, St. 1931 [21 Okla. St. Ann. § 1577] is the knowingly passing as true, or attempting to pass as true, such forged instrument with the intent to cheat and defraud.

"The foregoing section sets forth the offense sought to be charged by the information in this case; and by this section, the gravamen of the offense is the sale, exchange, or delivery of the instrument for a consideration, knowing it to be forged or counterfeited.

"Generally speaking, if an instrument is invalid and is void on its face, it cannot be the subject of forgery, for it can then have no legal tendency to effect a fraud. If its invalidity, however, is to be made out by extrinsic facts, it may be legally capable of effecting a fraud."

In the Johnson Case, the court differentiated the check involved from the juror's certificate of attendance, which was the subject of the Delana Case. In other words,

extrinsic evidence was not necessary to show the invalidity of the juror's certificate of attendance, but extrinsic evidence would be necessary to show the invalidity of the check involved in the Johnson Case.

The numerous authorities cited by counsel for petitioner show that to forge an instrument which upon its face is of no validity or binding force does not constitute the crime of forgery. No authorities would seem necessary for so plain a proposition.

There is no question but that an instrument, which is invalid and void upon its face, cannot be made the subject of forgery, but a false instrument, which is good on its face, may be legally capable of effecting a fraud, though inquiry into extrinsic facts should show it to be invalid, even if it were genuine; therefore, forgery of such instrument is a crime.

"Forgery" is defined by Blackstone to be:

"The fraudulent making or altering of a writing to the prejudice of another's rights." 4 Bl. Comm. 247.

Mr. Bishop says:

" 'Forgery' is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." 2 Bish. Crim. Law, 8th Ed., § 523.

From the definitions of "forgery" as above stated, as well as from the statute, it will be seen that the essential elements of the crime are, the false making of an instrument in writing, apparently capable of effecting a fraud, together with a fraudulent intent.

In an information for forgery or for uttering a forged instrument, or for passing the same, it is sufficient to charge that it is a forged writing, was uttered or passed

with knowledge of the forgery, with an intent to defraud. Wilborn v. State, 26 Okla. Cr. 437, 224 Pac. 214.

In the case of Diamond v. State, 57 Okla. Cr. 214, 46 Pac. 2d 966, defendant Diamond was charged with forging the name of Morton R. Harrison, to a claim for $242 against the Soldiers' Relief Commission. It was the contention of the defendant in this court on appeal that this relief claim could not be the subject of forgery. This contention was overruled. This court held that the instrument was the subject of forgery within the terms of the statute.

In the case of People v. Ciralsky, 360 Ill. 554, 196 N. E. 733, the Supreme Court of Illinois held:

"Indictment charging forgery of grocery order ostensibly issued to needy persons by public welfare bureau held good as against motion to quash; there being sufficient allegations to show that instrument was susceptible of being used to defraud state."

And again:

"Forgery indictment need not allege that instrument forged, if genuine, would create legal liability."

In the case of Lurye v. State, 221 Wis. 68, 265 N. W. 221, the Supreme Court of Wisconsin held:

"Certificate of indebtedness issued by city, although unenforceable on account of defects in proceedings leading up to its issuance, could be subject of forgery, where carrying no evidence of invalidity on its face."

In the opinion it is said:

"The question for determination here is: Does the instrument in question upon its face appear to be good? The defendants point out many defects in the proceedings leading up to the issuance of this certificate. No tax was levied; the certificate was not signed by the comptroller;

the city had exceeded its debt limit. It did not contain on its face a statement of the purpose for which it was issued.

"Section 62.12 (6) provides:

" 'Funds; appropriations; debts. (a) City funds shall be drawn out only by authority of the council and upon order of the mayor and clerk, countersigned by the comptroller, if there be one. Each order shall specify the purpose for which it is drawn, and be negotiable. * * *

" '(c) No debt shall be contracted against the city nor evidence thereof given unless authorized by a majority vote of all the members of the council.' * * *

"The certificate of indebtedness had the appearance of validity, and could therefore be the subject of forgery."

And see People v. McDonald, 53 Colo. 265, 125 Pac. 114; Norton v. State, 129 Wis. 659, 109 N.W. 531, 116 Am. St. Rep. 979.

It is also contended that the said claim or requisition is void, for the reason that the same was not executed in the manner provided by law, in that the purported signature of Fred D. Lowe, placed thereon by rubber stamp without his knowledge or consent, is a nullity.

On the face of said requisition appears the following:

"By order of County Public Welfare Board,

"[Signed] Fred D. Lowe, Chairman of County Public Welfare Board.

"Attest: Coma Biewer, Secretary of County Public Welfare Board,

"Approved for Payment: Fred D. Lowe, Chairman of Board of County Commissioners Member of County Public Welfare Board.

"This requisition is not acceptable unless the above

schedule of condition is filled in. Must be signed by two members."

It appears that more than two thousand requisitions, signed in the same way as requisition No. 2038, had been issued and paid when the one purporting to have been given to Willie McCullough was issued. All bore rubber stamp signatures of Fred D. Lowe.

Our statute defines a "signature" as follows:

"The term 'signature' includes any name, mark or sign, written with the intent to authenticate any instrument or writing." Section 1791, St. 1931, 21 Okla. St. Ann. § 100.

In 58 C. J. 729, it is said:

"A signature may be written by hand, or printed, or stamped, or typewritten, or engraved, or photographed, or cut from one instrument and attached to another. A signature lithographed on an instrument by a party is sufficient for the purpose of signing it, and it has been held that it is immaterial with what kind of an instrument a signature is made."

Again, on page 730, C. J., it is said:

"Facsmile signature of a party may be a genuine signature."

In the case of Costila Estates Dev. Co. v. Mascarenas, 33 N. M. 356, 267 Pac. 74, the Supreme Court of New Mexico announced the following rule:

"Court clerk's signature by rubber stamp to indorsement of filing paper in cause not prohibited by general principles nor by Code 1915, § 1401."

And again in the same case, after quoting the New Mexico statute, it is said:

"This statute does not require the clerk to write his

name; only that he sign it. Generally a signature, if adopted as such, may be printed, lithographed, or type-written, as well as written. 33 Cyc. 443. The decisions there collected show that signatures not autographs are held sufficient to satisfy a variety of statutory and other requirements."

See, also, Tenement House Department v. Weil, 76 Misc. 273, 134 N.Y.S. 1062.

The state's contention is that the requisitions were not invalid because Fred D. Lowe's signature was a facsimile.

There can be no question but that officials of and persons in the county welfare board, the county clerk's office, and the county treasurer's office furnishing aid to relief claimants, depended upon the signatures of Fred D. Lowe as affixed to these requisitions, as having been duly authorized and adopted by Fred D. Lowe.

The authorities support the state's contention, and we are of opinion that the facsimile signatures thereon were sufficient to authenticate the requisitions so approved including the instrument in question.

It is also contended that one signature, that is, the secretary of the county welfare board, is not in compliance with the requirement that two members must sign.

In Luyre v. State, supra, the Supreme Court of Wis-consin quoted this language, which was superimposed upon a forged certificate:

"This certificatee of indebtedness shall not be dis-counted. This certificate of indebtedness if discounted will cease to be an obligation of the city of Superior."

The Supreme Court of Wisconsin, nevertheless, held this certificate subject to forgery, even though it had been

discounted. In other words, the requirement superimposed on the face of the requisition, in the absence of express statute, could not be a condition of the contract or requisition.

The schedule of condition is filled in; the balance in the relief fund is carried forward according to the requirement of the requisition.

The claim was properly verified before Helen Nix, county clerk, and attested by the seal of the office, as shown by the copy of the requisition set forth in the information.

It follows from what has been said that the information alleges all the essential elements of the crime of uttering a forged instrument, with intent to defraud, and gives to defendant full information of the nature and cause of the accusation against him, to which he is entitled under section 20, article 2 of the Constitution of the state. And, aside from any authority, we should hold the information good, since it plainly and with sufficient fullness follows the language of the statute upon which it is drawn.

Now coming to the contempt case. Counsel contend that:

"The district court had no jurisdiction to try this petitioner for the reason that if any contempt was committed it was indirect criminal contempt, and under the laws of this state the petitioner was entitled to a trial by jury, and all the rights and privileges guaranteed by the Constitution to any one charged with a criminal offense."

The petitioner demanded a trial by jury, which was denied by the court.

The argument is made that evidently the judge trying

the petitioner herein "thought that it was an indirect contempt for the reason that he, himself, dictated the complaint, which would not have been necessary had it been a direct contempt of court."

Quoting section 25 of article 2 of the State Constitution:

"The Legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the State shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

Also quoting the statute, section 1958, 21 Okla. St. Ann. § 567, declaring that:

"In all cases of indirect contempt the party charged with contempt shall be notified in writing of the accusation and have a reasonable time for defense; and the party so charged shall, upon demand, have a trial by jury."

Citing Ex parte Owens, 37 Okla. Cr. 118, 258 Pac. 758, 760, wherein this court states:

"A criminal contempt is a crime. If the contemnor is found guilty, the punishment imposed is a 'sentence' in a criminal case. Such adjudication is a 'conviction,' and commitment in consequence thereof is an execution of sentence for a criminal offense."

Also Wofford v. State, 33 Okla.Cr. 288, 243 Pac. 988, 989, wherein the court used the following language:

"Since the facts contained in the charge did not occur in the immediate view and presence of the court, the pro-

ceeding attempted to charge defendant was an indirect contempt."

"A proceeding to punish for indirect contempt must be instituted by affidavit, complaint or information, setting forth the facts or by a statement of them in writing by the court or judge thereof. The accused must then be notified in writing of the accusation, and have a reasonable time for defense and upon demand shall have a trial by jury."

The evidence shows or tends to show that the jury were in the jury box in the district courtroom, respondent, Judge Arnold, presiding; the jury asked for an additional instruction relative to leaving punishment to the court in the event defendant was found guilty. While Judge Arnold was instructing the jury on this point, eleven jurors were leaning forward in an attitude of close attention to what the court was saying. On juror, Mr. Katz, was sitting bolt upright in his chair, with his attention attracted to something disassociated from the court or his immediate surroundings. This juror was moving his head up and down in an affirmative motion and then from side to side in a motion indicating negative. His attitude was such that the court's attention was attracted thereto, but he could not see the object of Katz's attention. 'After the jury was excused, Mrs. Davis, a spectator in the courtroom, who was in a position to view the entire surroundings, curiously inquired about the extraordinary motions she had observed on the part of this juror, and a person later identified as William L. Moss. When her version of the unusual action of these two men was told to the court, it appeared to his honor that the nodding and wagging of his head by Juror Katz was in response to a communication conveyed by William L. Moss.

Petitioner Moss at the time was seated behind the

court in the courtroom and across the court from the jury box. His honor informed Moss that for this improper conduct on his part he was in contempt and directed him to appear the following morning. Upon the appearance of Moss and his counsel in court a hearing was set for Monday, October 25th, at which time the hearing commenced.

It goes without saying that petitioner is in no position to dispute the fact that the court was in session. However, it is contended that the actions of these two parties did not happen in the immediate view and presence of the court.

The statute, Penal Code, § 1913, 21 Okla. St. Ann. § 388, declares:

"Every person who attempts to influence a juror, or any person summoned or drawn as a juror, or chosen as arbitrator or appointed a referee, in respect to his verdict, or decision of any cause or matter pending, or about to be brought before him, either:

"1st, By means of any communication oral or written had with him, except in the regular course of proceedings upon the trial of the cause; * * * is guilty of a misdemeanor."

The statute defines the common-law offense of "embracery." The books say: "Embracery is an attempt to influence a juror corruptly to one side by promises, persuasions, entreaties, money, entertainments, and the like." 4 Bl. Com. 140. The crime is made up of the attempt thus to influence a juror. Upon such attempt being made, whether successful or not, the crime is consummate.

Bishop says:

"Embracery being an attempt, as well as a consummated injury, there appears to be no room for such an

offense as an attempt to commit it; because, if there is an attempt which is indictable, it is itself embracery." 2 Bishop, New Cr.L., 8th Ed., § 389.

In the case of State v. Doty, 32 N.J.L. 403, 90 Am. Dec. 671, the defendant was punished for contempt. The statement of the case is as follows:

"The defendant was acquitted before the oyer and terminer of the county of Monmouth, on an indictment for embracery. A rule was then entered that he show cause why he should not be attached for contempt of court, in holding intercourse with a juryman in charge of a case. The defendant being interrogated, stated, under oath, that while a certain trial was progressing he fell in company with one of the jurors, who had then been sworn, and said to him: 'If I could find out how the jury would stand after they go out, I might win some money on it.' The juror said, 'How?' To which defendant replied, 'I could bet on it.' The juror replied, 'How would that benefit me?' To which defendant replied, 'You can be benefited one-half I can win on it.' The juror then said, 'How could I let you know?' Defendant said, 'If it is probable they will not agree, come to the window with a piece of paper in your mouth, and if they will agree you need not hold anything in your mouth.' It further appeared that nothing was said about the merits of the case, nor did the defendant state how he wished the jury to decide. The defendant was neither a witness nor a party in the cause, and it was admitted that the foregoing conversation was the transaction on which the indictment for embracery was found."

The opinion of the Supreme Court was by Beasley, Chief Justice. We quote from the opinion:

"Nor do I think there is any force in the other objection which was urged, that the infliction of a summary punishment in the present case, would be an infringement of that clause of the constitution of this state, which guarantees to the citizen a trial by jury. * * *

"The only remaining cause for setting aside this proceeding, suggested by counsel, was that, in point of fact, the transaction did not disclose any contumacy to the authority of the court, on the part of the defendant. And on this head it was urged that the acquittal of the defendant on the indictment, which was based on this same affair, must have the effect to purge him from every suspicion of impropriety in his conduct in this particular. But it is obvious that the behavior of the defendant may have been highly illegal and reprehensible, and yet may not have gone to the extreme height of technical embracery. And this is the construction I put upon his conduct. The law strictly forbids all intercourse, of every description, upon the subject of the cause on trial, between jurors and all other persons. To effect this end, the court commits them in charge of one of its sworn officers. The consequence must be, therefore, that any attempt to invade this seclusion is illegal, and a palpable violation of judicial authority. It may be some extenuation, but certainly cannot be a vindication of such conduct to say that no effort was made, by the illegitimate communication, to turn the juror from the line of his duty. The legal inhibition is against all intercourse with the jury during their consultation, and it is manifest any sequestration short of this would be entirely illusory, for it is certain if the door were thrown open, that no mode could be devised so that only proper intelligence would be permitted to pass. When, therefore, in this case, the defendant solicited the juror to signal to him the views of the jury, it was an endeavor to induce the juror to do that which was inconsistent with his duty, and with the order of the court directing his isolation. It would be unfortunate, indeed, if such an act were not punishable as a contempt of the authority of the court. I know nothing which calls for keener vigilance on the part of judges, than everything which has a tendency to expose jurors to the arts of the friends or followers of litigants. It is every day's experience that the course of justice is constantly thrust aside by this obstacle. The evil would certainly be greatly aggravated, if the courts were powerless to prevent all com-

munication of every kind whatsoever, between the jury and the rest of the community whilst the verdict is being formed. But the jury cannot be isolated unless the court is prompt to punish those who infringe, in the slightest degree, the order directing such isolation."

The same question is likewise discussed in the case of People v. Barrett, 56 Hun, 351, 9 N.Y.S. 321. The facts are detailed in the first paragraph of the syllabus as follows:

"A newspaper reporter concealed himself in the petit jury-room, before retirement of the jury in a criminal cause, and afterwards, while they were deliberating, took short-hand notes of what he heard. On being discovered, he was made to deliver his notes to the judge, but refused to promise secrecy when admonished by the judge. He was then discharged, and afterwards published his recollections of the jury's deliberation. The court had remained in session during the time the jury were out, the judge being part of the time on the bench, and during the rest of the time in the judge's chambers, in the same building. Held, that the reporter was guilty of criminal contempt committed in the immediate presence and view of the court."

Van Brunt, P. J., delivering the opinion of the court, said:

"It is true that section 10 of the Code of Civil Procedure states that a contempt committed in the presence of the court may be punished summarily, but it does not say that it must be so punished, or that, although the offense has been so committed in the presence of the court, but the judge has failed to see the same, he must proceed without proofs or process. The fallacy upon which the whole of this point rests seems to be that an offense cannot be committed in the presence of the court if the judge does not see it, and cannot assert the facts in his warrant of commitment, of his own knowledge, that the offense had been committed. Suppose, for example,

that during the progress of a trial, while the judge is on the bench and the jury in its seat, a communication is made to one of the jurymen which the judge does not see, but of which he is informed. Can he commit the offender without some proof of the commission of the offense? And yet even the most critical would say that this offense was committed in his immediate presence, and still he would be entirely unable to certify, of his own knowledge, that the offense had been committed. It would be necessary that he should have proof, and he is entitled to time to have the proof presented before him in a legal and formal manner.

To the same effect is the case of Ex parte Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150.

The statute, Penal Code, § 1956, 21 Okla. St. Ann. § 565, is in part as follows:

"Direct contempt shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence."

The last expression of this court construing the same is found in Deskins v. State, 62 Okla. Cr. 314, 71 Pac. 2d 502-506:

"In a proceeding for contempt of court, if the contemner is found guilty, the punishment imposed is a sentence in a criminal case. Such adjudication is a conviction, and the commitment in consequence thereof is in execution of sentence for a criminal offense. Burnett v. State, 8 Okla. Cr. 639, 129 Pac. 1110, 47 L.R.A. (N.S.) 1175.

"The third and last clause of section 25 of the Bill of Rights (Const. art 2) provides:

" 'In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given'; thus prescribing that which the plainest dictates of natural justice must prescribe to every tribunal, the

law that 'no man shall be condemned unheard.' Ex parte Owens, 37 Okla. Cr. 118, 258 Pac. 758, 810.

"The statute (Penal Code, § 1956, 21 Okla. St. Ann. § 565) provides: 'Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for.'

"The constitutional provision and the statute merely affirm a pre-existing power. Without the power, courts could not fulfill their responsible duties for the good of the public.

"No one doubts either the right or duty of a court to punish as contempts disorderly and contumelious behavior, breaches of the peace, or any willful disturbance in its presence. The right rests on the necessity that was found to exist to enable courts to administer the law without interruption by improper interference, and to maintain their own dignity. So indispensable is this power that its just exercise, so far as it may be necessary for the due protection of the courts, has never been questioned.

"In cases of direct contempt under the constitutional and statutory provisions, the contemner being present in court, neither formal charge against him in writing nor process is required. It is only required that punishment shall not be imposed until the contemner shall have an opportunity to be heard. Since the court acts upon view and hearing, no witness need be sworn nor formal evidence taken. The court in its discretion renders judgment imposing such punishment as it may deem proper within the limits prescribed by the statute. No record is made other than the judgment, in this, as the statute provides, 'The substance of the offense shall be set forth

in the order for his confinement, and made a matter of record in the court.' Section 1959, St. 1931 (21 Okla. St. Ann. § 568). This provision can only mean that the order of confinement must contain a recital of those facts which make it a direct contempt, and is mandatory in its terms. Ex parte Dawes, 31 Okla. Cr. 397, 239 Pac. 689; Lynn v. State, 38 Okla. Cr. 313, 260 Pac. 1069."

In the case of Lynn v. State, supra, the defendant was convicted of direct contempt. Judgment affirmed. It appears that defendant came into open court with a loaded pistol on his person and accidentally dropped the same. We quote from the trial court's findings:

"The thought struck me first that it was a pistol, but I thought no one in the world would come in the court room with a gun. No; I concluded it was a knife. I couldn't believe he would be so bold, so foolish, as to come in the court with a pistol. So I dismissed it from my mind. It was stated to me afterwards that it was a pistol that he dropped on the floor. The court is still of the opinion he was in contempt of court, and I so hold. You may make your record as you see fit. * * *"

In 6 Ruling Case Law, 492, it is said:

"Since the law relating to direct contempts is generally distinguishable from that relating to indirect contempts, many of the cases define what is meant by 'the presence of the court.' It is said that the court consists not of the judge, the court room, the jury, or the jury room, but of all of these combined; and wherever any constituent part of the court is engaged in the prosecution of the business of the court according to law, there the court is present. Any disorderly, contemptuous, or insolent behavior committed in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law must be a contempt committed in the immediate view and presence of the court."

Contempt may be shown by either language or manner. Whether a direct contempt has been committed does not depend on the intention of the offending party, but on the act done. Disobedience to the judicial authority of the court is a contempt, unless the party can show sufficient cause to excuse it.

The manner of procedure by rule to show cause or by citation does not affect the question whether or not the act charged was "in the presence of the court."

In the light of these authorities, it is clear that a contempt, committed in the courtroom while the court is in session and the judge is on the bench, is committed "in the presence of the court." And we think this is so self-evident that it would serve no useful purpose to review the cases cited holding that only such contempts as are committed within the ocular view, or range of vision, of the court, are committed in "the presence of the court."

Without expressing any opinion as to whether or not the conduct of petitioner was in contempt of court, we hold that the acts charged were committed in the presence of the court.

Finally it is contended that by reason of the prejudice and pre-judgment of respondent as trial judge, petitioner is deprived of due process of law, because denied the right to a trial before an impartial judge.

The record shows the refusal of respondent to disqualify himself on motion of petitioner's counsel.

It is well settled under our decisions that under the statute, section 2915, St. 1931, 22 Okla. St. Ann. § 575, it is necessary that an application for change of judge on the ground of prejudice set forth facts upon which the

claim is made. Mere conclusions will not be sufficient. Pruitt v. State, 62 Okla. Cr. 38, 70 Pac. 2d 129.

The constitutional provision which guarantees to every person charged with crime a trial without prejudice, in so far as it relates to the presiding judge, does not include the opinion of the judge as to the guilt or innocence of the defendant; the "prejudice" contemplated means the presence of such state of mind or feeling as might prevent him from giving the defendant a fair trial. Fisk v. Venable, 61 Okla. Cr. 360, 68 Pac. 2d 425.

Our conclusion is that the district court and respondent as judge, had jurisdiction of the subject-matter and of the person of petitioner, and that irregularities, if any, occurring in the conduct of the case did not affect the validity of the proceedings had in the hearing of the case.

In the event of a judgment of conviction, if petitioner feels himself aggrieved by the court's overruling his numerous objections to the sufficiency of the accusation and the sufficiency of the evidence to support the same, his remedy is by appeal, and is ample for his protection.

For the reasons stated in the opinion, the application for a writ of prohibition is denied. It is so ordered.

DAVENPORT, P. J., concurs.

BAREFOOT, J. (dissenting in part). I cannot concur in that part of the above opinion which seeks to go into and decide the validity of the information filed in this case. The only question, to my mind, here involved is whether or not a direct or indirect contempt was committed, and whether a writ of prohibition should be granted or denied to determine this question. From an examination of the briefs and the transcript of the evidence only in the contempt proceedings, I am of the opinion that if

it should be found, as a matter of fact, that the petitioner committed the acts complained of, it would be a direct contempt and in the presence of the court. The mere fact that petitioner was sitting behind the court, and the court did not see his every movement, would to my mind not be a valid reason why the act was not in the presence of the court. With this part of the opinion I am in accord. The facts revealed by the briefs and the transcript that there are now pending in the district court of Oklahoma county numerous cases against numerous defendants growing out of the violation of the statute, and the informations filed in those cases, are similar to the information filed in the case at bar. I do not think the validity of the informations in those cases should be determined in this hearing, simply because the court might be requested to do so in the brief of counsel for petitioner. In the brief of respondent authorities from the courts of this state and other states are cited in support of the proposition that the validity of the information is and should not be involved in deciding the question presented in this hearing. Harrah v. Oldfield, 68 Okla. 30, 171 Pac. 333; MacThwaite Oil & Gas Co. v. Bolen, 77 Okla. 155, 187 Pac. 221; Busey v. Crump, 108 Okla. 73, 233 P. 714; Corley v. Adair County Court, 10 Okla. Cr. 104, 134 P. 835; Whitney v. Superior Court of Alameda County, 182 Cal. 114, 187 P. 12. They then brief the question replying to the brief filed by petitioner, but the court is not urged to pass upon this question, and by their briefs they contend that it is not involved, and is not necessary to be passed upon in this hearing. If necessary, these cases can come before this court on direct appeal, and opportunity then could be had to determine the validity of the information filed, and the merits of the appeal could be passed upon when all the issues are before the court. The authorities above

quoted set out the purpose and object of the writ of prohibition, and clearly it is not proper to go into questions which may be presented to the court by direct appeal. In this proceeding we have a party who has not been informed against, seeking a writ of prohibition, and asking the court to decide as to the validity of an information filed against other parties, and who are not parties to this proceeding. It does not occur to me that it is a sufficient answer that the decision will tend to avoid a multiplicity of suits. In the case of Evans v. Willis, 22 Okla. 310, 97 P. 1047, 1051, 19 L.R.A.,N.S., 1050, 18 Ann. Cas. 258, Judge Williams, while a member of the Supreme Court of this state, said:

"Such extraordinary writ will not be awarded when the ordinary and usual remedies provided by law, such as appeal, writ of error, certiorari, or other modes of review or injunction, are available. Ex parte Smith, 23 Ala. 94; Ex parte Smith, 34 Ala. 455; Ex parte Scott, 47 Ala. 609; Ex parte Reid, 50 Ala. 439; Ex parte Mobile, etc., R. Co., 63 Ala. 349; Weaver v. Leatherman, 66 Ark. 211, 49 S.W. 977."

And further says:

"The writ will not be issued on account of the inconvenience, expense, or delay of other remedies, but will be granted where the remedy available is insufficient to prevent immediate injury or hardship to the party complaining, particularly in criminal cases."

The propositions relied upon by the petitioner in this case are:

"1. The district court had no jurisdiction in the original action in which the alleged contempt was committed for the reason that the purported requisition was void on its face and not the subject of forgery and further the information wholly fails to state facts sufficient to charge forgery in the second degree, or any other crime under

the laws of Oklahoma." and, "4. Prohibition is the proper remedy where an inferior court assumes to exercise judicial power not granted by law, or is attempting to make an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by it."

This question could be decided by the trial court by a demurrer to the information, the case tried on its merits, and if defendant was convicted an appeal may be had under the law, and all the questions involved decided on appeal. If it be held that this court should issue a writ of prohibition involving questions such as are raised here, the trial of cases in their regular order will be stopped, and applications made to this court for a writ of prohibition testing the validity of indictments and informations, on the ground that they do not state facts sufficient to charge a crime, and therefore the proceedings are void, and that the court is without jurisdiction to try the case. This will cause not only delay in the trial of criminal cases, but additional costs and inconveniences to the county and state. Witnesses will not be available when the case is finally reached. For this reason I am unable to agree that this extraordinary relief should be granted in cases of this character, even though the court might have a right to grant the relief. I am of the opinion that this mode of procedure will be a detriment rather than a benefit in the enforcement of the criminal laws of this state.

In the case of Ex parte Mobile, etc., R. Co., 63 Ala. 349, the court, speaking with reference to the writ of prohibition, quoted from Bacon as follows:

"A writ of prohibition will not lie, when a court has jurisdiction, and errs in its exercise. The writ lies, not for the correction of errors, but for the prevention of

usurpation. 'The object of prohibitions, in general, is,' it is said in Bacon's Abridgment, 'the preservation of the right of the King's crown and courts, and the ease and quiet of the subject. For it is the wisdom and policy of the law to suppose both best preserved when everything runs in its right channel, according to the original jurisdiction of every court; for, by the same reason that one court might be allowed to enroach, another might; which could produce nothing but confusion and disorder in the administration of justice.'—8 Bacon's Abr. 209."

Judge Furman, in an early opinion of this court, in the case of Corley et al. v. Adair County, 10 Okla. Cr. 104, 134 Pac. 835, 837, had up for consideration a question wherein the district court of Adair county, being in regular session, entered an order reciting that the county attorney of Adair county was disqualified from appearing in his official capacity before the grand jury of his county in certain matters, which were to be investigated by the grand jury, and appointed another attorney as special attorney to go before and advise the grand jury with reference to such matters. The regularly elected county attorney of Adair county protested this order. The grand jury returned an indictment against petitioners charging them with conspiracy, and a motion was made to set aside the indictment on the ground that it was returned by a grand jury attended by an unauthorized party. The motion was overruled by the court, and a petition for writ of prohibition was filed in this court praying the court to prohibit the county court of Adair county from rendering judgment against said petitioners on said verdict, it being claimed that the proceedings and the indictment returned by the grand jury were void. In this case, Judge Furman said:

"The fact that an unauthorized person was present when the grand jury was deliberating upon this case would

simply constitute a defect or irregularity which might be taken advantage of by the defendant or might be waived; therefore it would not make the indictment void. Where a county attorney is disqualified, the trial court has the right and it is its duty to appoint a special attorney to represent the state either before the grand jury or in open court. As to whether or not this power was properly exercised in the present case is a question which cannot be considered upon a petition for a writ of prohibition. Where the court has jurisdiction of the subject-matter and of the person of the defendant, the writ of prohibition will not lie on account of any irregularities in the action of the trial court. Appellate courts should not interfere with trial courts in such instances, but the courts should be permitted to proceed to judgment, and the matters complained of should be reviewed only upon appeal, when the entire transcript of the record can be brought up for consideration. It would paralyze and defeat the enforcement of criminal law if writs of prohibition were issued on account of irregularities where the trial court had jurisdiction of the subject-matter and of the person of the defendant. In other words, a writ of prohibition cannot be used for the purpose of appealing cases upon the installment plan. For these reasons we will not consider the question as to whether or not the action of the trial court in appointing Hon. R. Y. Nance as special county attorney was regular or irregular, but remit petitioner to their right to bring this case on appeal upon the entire record when all questions involved can be settled in one decision.

"The writ of prohibition, being an extraordinary remedy, can only be invoked in extreme cases; and, to prevent irreparable injury, the writ of prohibition is therefore denied." Jeter v. District Court of Tulsa County, 87 Okla. 3, 206 Pac. 831; State ex rel. Paul Chin v. Superior Court for King County, 139 Wash. 449, 247 Pac. 738: In re Weaver, 162 Wis. 499, 156 N.W. 459; State v. Fischer, 175 Wis. 69, 184 N.W. 774; Hudspeth v. Tracey, 203 Ky. 277, 262 S.W. 260; 50 C.J. 689.

In the case at bar the court denies the writ of prohibition. This, to my mind, is proper and correct, but the court, after denying the writ, considers the same upon its merits and decides that the information filed in the case was valid. As stated in respondent's brief, after quoting the case of Corley v. Adair County, supra, it was said:

"It would paralyze and defeat the enforcement of criminal law if writs of prohibition were issued on account of irregularities where the trial court had jurisdiction of the subject-matter and of the person of the defendant."

In the case at bar the trial court had jurisdiction of the subject-matter and of the person of the defendant. The writ of prohibition is sought by strangers to the proceedings. I cannot, therefore, agree with that part of the opinion which passes upon the validity of the information without the case being regularly appealed to this court.

For the reasons above stated I do not think that this question should have been considered by the court in this proceeding.