## THE STATE v. JOHN L. DOTY.

1. It is a contempt of court for any person to offer to make an arrangement with a juryman for the latter to convey, by signal, how the jury stand with regard to their verdict, after they have retired to consult.
2. The law directs the complete seclusion of the jury, and any attempt to invade such seclusion is an effort to infringe the order of the court to that effect.
3. The power of courts to punish for contempt extends to all persons who injuriously interfere with the proper exercise of their judicial functions, whether such persons be officers of such courts, or parties, or strangers.

On rule to show cause why an attachment should not issue, &c.

The defendant was acquitted before the Oyer and Terminer of the county of Monmouth, on an indictment for embracery. A rule was then entered that he show cause why he should not be attached for contempt of court, in holding intercourse with a juryman in charge of a case. The defendant being interrogated, stated, under oath, that while a certain trial was progressing he fell in company with one of the jurors, who had then been sworn, and said to him: " If I could find out how the jury would stand after they go out, I might win some money on it." The juror said, " How ?" To which defendant replied, " I could bet on it." The juror replied, " How would that benefit me ?" To which defendant replied, " You can be benefited one-half I can win on it." The juror then said, " How could I let you know ?" Defendant said, " If it is probable they will not agree, come to the window with a piece of paper in your mouth, and if they will agree you need not hold anything in your mouth." It further appeared that nothing was said about the merits of the case, nor did the defendant state how he wished the jury to decide. The defendant was neither a witness nor a party in the cause, and

it was admitted that the foregoing conversation was the transaction on which the indictment for embracery was founded.

Argued before the CHIEF JUSTICE, and Justices VREDEN-BURGH, WOODHULL, and DEPUE.

For the defendant, *Mr. Parker.*

For the state, *Mr. McLean.*

The opinion of the court was delivered by

BEASLEY, C. J.    The first objection interposed against this proceeding was one relating to the authority of the court to deal with, as a contempt, an act done out of its presence, by a person who was neither a party to the suit, nor an officer of the court.    But the limitation of judicial authority thus set up, is clearly inconsistent with the rules of law, and with the ancient, as well as modern, practice upon this subject.    It has been always held that the power of judicature implies the right to exercise that function, undisturbed by improper influences affecting it extraneously. A court would fail, of necessity to accomplish the end of its institution, if it could not maintain order and enforce obedience to its precepts.    The authority is derived from necessity, and *the authority ceases only where such necessity* ceases.    The illustrative cases are numerous.    Thus, it is a contempt of court in all persons who resist the execution of its writs, or treat contumeliously its officers in the lawful discharge of their duties ; so to solicit a witness to disobey a subpœna ; to offer insult to a judge for his conduct while on the bench, or to publish any thing relating to a cause pending in court, and which has a tendency to prejudice the public mind upon the subject, or which contains improper strictures on the conduct of counsel, witnesses, or parties— all these are familiar instances which in repeated adjudications have been visited penally as contempts.    *Common-*

*wealth* v. *Dandridge,* 2 *Va. Ca.* 408; *Respublica* v. *Oswald,* 1 *Dall.* 319; *People* v. *Few,* 2 *Johns.* 290; 4 *Bl. Com.* 258; *Rex* v. *Clement,* 4 *B. & Ald.* 218.

Nor do I think there is any force in the other objection which was urged, that the infliction of a summary punishment in the present case, would be an infringement of that clause of the constitution of this state, which guarantees to the citizen a trial by jury. The constitutional declaration is, that "the right of a trial by jury shall remain inviolate," and the effect of the clause is to establish the privilege by the highest of sanctions, but not to enlarge it. The provision operates as a restraint upon the legislative power; the right is not to be impaired or diminished, but is to remain as it existed at common law, and according to the practice of the courts anterior to the establishment of the fundamental law. In this sense it is that this provision has been heretofore received, for it has never been doubted that, since the date of the constitution, summary proceedings, such as convictions before magistrates under the act relating to vice and immorality, and others of a similar character, and having an ancient origin, are undeniably legal. Neither can it escape observation, that the opposite hypothesis would render illegal all punishments for contempt committed in the presence of the courts, for in that class of cases the party proceeded against, if the present point be well taken, would likewise clearly be entitled to a trial by the country.

The only remaining cause for setting aside this proceeding, suggested by counsel, was that, in point of fact, the transaction did not disclose any contumacy to the authority of the court, on the part of the defendant. And on this head it was urged that the acquittal of the defendant on the indictment, which was based on this same affair, must have the effect to purge him from every suspicion of impropriety in his conduct in this particular. But it is obvious that the behavior of the defendant may have been highly illegal and reprehensible, and yet may not have gone to the extreme height of technical embracery. And this is the construc-

State v. Doty.

tion I put upon his conduct. The law strictly forbids all intercourse, of every description, upon the subject of the cause on trial, between jurors and all other persons. To effect this end, the court commits them in charge of one of its sworn officers. The consequence must be, therefore, that any attempt to invade this seclusion is illegal, and a palpable violation of judicial authority. It may be some extenuation, but certainly cannot be a vindication of such conduct to say that no effort was made, by the illegitimate communication, to turn the juror from the line of his duty. The legal inhibition is against all intercourse with the jury during their consultation, and it is manifest any sequestration short of this would be entirely illusory, for it is certain if the door were thrown open, that no mode could be devised so that only proper intelligence would be permitted to pass. When, therefore, in this case, the defendant solicited the juror to signal to him the views of the jury, it was an endeavor to induce the juror to do that which was inconsistent with his duty, and with the order of the court directing his isolation. It would be unfortunate, indeed, if such an act were not punishable as a contempt of the authority of the court. I know nothing which calls for keener vigilance on the part of judges, than everything which has a tendency to expose jurors to the arts of the friends or followers of litigants. It is every day's experience that the course of justice is constantly thrust aside by this obstacle. The evil would certainly be greatly aggravated, if the courts were powerless to prevent all communication of every kind whatsoever, between the jury and the rest of the community whilst the verdict is being formed. But the jury cannot be isolated unless the court is prompt to punish those who infringe, in the slightest degree, the order directing such isolation. I think public policy requires that no one should escape punishment, who is found in any respect invading the privacy of the jury room.

The present case, in my opinion, affords a single example of the danger attending such misbehavior. The defendant

requested the juror to give him a certain signal if the jury were likely to disagree. On the strength of the intelligence thus to be received, a bet was to be made, in which the juror was to have an interest. Now, suppose this scandalous proposition had been accepted, the signal given, and the bet made, can any one deny that the juror in question would have occupied a position inconsistent with the fair discharge of his duty? After conveying the information of the disagreement of the jury, his interest would lead him to continue that state of affairs. He would neither change his own views, nor attempt to change the views of his fellows, except at a supposed pecuniary sacrifice. Such would have been the result if this scheme of the defendant's had been realized. The attempt to realize it was a flagrant contempt of the judicial authority, and I have no more doubt that the defendant, in this case, deserves punishment, than I have of the power of the court to inflict it.

Rule made absolute.