# R. V. BOYER v. STATE.

No. A-9565.   Dec. 21, 1939.
(97 P. 2d 779.)

222

Glen O. Morris, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis R. Morris, Co. Atty., and Walter Marlin, Asst. Co. Atty., both of Oklahoma City, for the State.

DOYLE, P. J. Appellant, R. V. Boyer, and M. H. Curnutt were jointly charged by information, duly filed in the district court of Oklahoma county on June 26, 1937, with the crime of forgery in the second degree. Upon their arraignment, each entered a plea of not guilty, September 14th, the case was set for trial October 4, 1937. Leave was granted to withdraw their pleas of not guilty. Thereupon the defendants filed a motion to quash the information, and a demurrer thereto, both on the ground that the information does not charge an offense. The same day, following the argument, the court overruled the same.

Defendant, R. V. Boyer, then re-entered his plea of not guilty and demanded a severance, which was granted.

Upon his trial the jury returned a verdict finding him guilty of the crime of forgery in the second degree as charged in the information, and fixed his punishment at imprisonment in the penitentiary for one year and one day. On March 30, 1938, his motion for new trial was overruled; thereupon the court rendered judgment in accordance with the verdict.

The petition in error, with case-made, was filed in this court on September 27, 1938.

Appellant relies upon two propositions for a reversal of the judgment. The same will be considered in the order presented.

The first is that the court erred in overruling the motion to quash the information, and in overruling the demurrer thereto.

The charging part of the information is that:

"On the 19th day of April, 1935, in Oklahoma county, State of Oklahoma, R. V. Boyer and M. H. Curnutt whose more full and correct names are to your informant unknown, then and there being, did then and there willfully, unlawfully and feloniously commit the crime of forgery in the second degree in the manner and form as follows, to wit: That is to say the said defendants in the county and state aforesaid, and on the day and year aforesaid, then and there being, while acting conjointly and together, did then and there willfully, unlawfully and feloniously sell, utter, exchange, deposit and file with Helen Nix, the duly elected, qualified and acting county clerk of Oklahoma county, Oklahoma, a forged requisition on the county welfare board of Oklahoma county, Oklahoma, issued to Willie McCullough in the sum of $10, said forged requisition being in tenor, purport and effect as follows:

" 'County Welfare Board No. 2038, Oklahoma County, Oklahoma. Amount $10.00 (Not to be over $10.00) Case No. 1918 Requisition.

" 'Oklahoma City, Okla. 4-19-1935

" 'To the County Clerk:

" 'When this requisition is properly receipted and endorsed you are authorized to issue your cash voucher on the county treasurer, for payment to the firm or person furnishing the items of food, clothing, fuel, medical or surgical necessities, or other necessary supplies authorized below and detailed on the dispenser's receipt on the back hereof, furnished to: Willie McCullough (Case Numbered above) Address 1119 E. 4th, under authority of Section 3, Senate Bill No. 1, Fifteenth Legislature:

| Quantity | Item | Value | Quantity | Item | Value |
|----------|---------|--------|----------|------|-------|
|          | Medical | $10.00 |          |      |       |

" 'Furthermore, this requisition is authority to any merchant, dispenser or doctor to furnish the supplies or service of the nature disclosed in the items detailed above to a value not exceeding the value extended above.

" 'We further certify that the foregoing schedule correctly discloses the true condition of the state public welfare fund of this county at this time, and that this requisition is within the available balance of said fund.

Total Allotted and received from State Treasurer to date ................................................................$39,912.84
Total Requisitions authorized prior to this order 12,511.95
Add above requisition ................................................ 10.00
Total requisition authorized .................................... 12,521.95
Balance unexpended .................................................... 27,391.89

" 'This order is not subject to assignment for discount, and is not subject to garnishment, or mesne or other final process. (Sec. 8).

" 'By Order of County Public Welfare Board.

" '(Signed) Fred D. Lowe, Chairman of County Public Welfare Board.

" 'Attest: Coma Biewer, Secretary of County Public Welfare Board.

" 'Approved for payment: Fred D. Lowe, chairman of board of county commissioners as member of county public welfare board.

" 'This requisition is not acceptable unless the above schedule of condition is filled in. Must be signed by two members.

" 'Receipt for supplies or Necessities. To the County Clerk:

" 'I hereby certify that I have received from Tower Drug Co. Address .......................... the following items of necessary supplies or medical or surgical services:

| Quantity | Item | Cost | Total |
|----------|------|------|-------|

" 'Received this..............day of........................., 19..........
" '(Signed) Willie McCullough.

" 'Claim. I, the undersigned, upon oath, depose and say that the above items and amounts represent a true and correct list of supplies furnished or services rendered to the person or family designated on the reverse hereof and receipted for above, that the amount indicated above is now due and payable and that I am the person who rendered such supplies or service.
" '(Signed) M. H. Curnutt.

" 'Subscribed and sworn to me this 22 day of April, 1935. (Signed) Helen Nix, County Clerk or Notary Public. (Seal)

" 'State Public Welfare Fund Claim No. 193 Claim Case No...........by Tower Drug Co. against the State Public Welfare Fund of Oklahoma County, State of Oklahoma. Filed this 22 day of Apr., 1935, Helen Nix, county clerk; by Ruth Turner Deputy. Record of Payment. In accordance with section 7749, O. S. 1931 (19 Okla. St. Ann. § 692), and under authority of the county public welfare board set forth on the requisition within, I have herewith complied with the terms of said Requisition by issuing

Voucher No. 193 Amount $102.00 on the county treasurer of this county, payable out of the State Public Welfare Fund of said county this 22 day of April, 1935. Helen Nix, county clerk of Oklahoma County.'

"With felonious intent to have the same uttered, passed, honored, and redeemed as true and genuine, and they, the said defendants, knew that the name of Willie McCullough appearing on said requisition as claimant and owner was forged and that said requisition so signed and filed was not a true and valid requisition and the signature of Willie McCullough as aforesaid, appearing thereon was and is a forgery and not the true signature of the party named in said requisition as claimant and was not done with the knowledge and consent of the said Willie McCullough; that the county clerk of Oklahoma county, Oklahoma, believing said requisition to be true and genuine, issued voucher Number 193 which was duly signed by William F. Vahlberg, county treasurer of Oklahoma County, Oklahoma, and cashed by said defendants; that said defendants uttered, passed, deposited and filed with said county clerk the requisition aforesaid with the intent to cheat, wrong and defraud the said county welfare board of Oklahoma county, Oklahoma, and the state of Oklahoma, contrary to," etc.

The appellant raised the question of the sufficiency of the information by motion to quash, by interposing a demurrer thereto, by objection to the introduction of evidence, and by motion for a directed verdict at the close of the state's evidence.

The statute upon which the conviction is based, Penal Code, sec. 2125, 21 Okla. St. Ann. § 1577, provides:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale,

exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for any consideration with the like knowledge and intent, is guilty of forgery in the second degree."

The relevant sections of Senate Bill No. 1, Laws of 1935, ch. 24, art. 17, 56 Okla. St. Ann. §§ 2, 3 and 10, are as follows:

"Section 2. There is hereby created in each county of this State for the purpose of administering the funds to be allocated thereto under the provisions of this Act, a County Welfare Board to be composed of the Chairman of the Board of County Commissioners, the County Judge and the County Superintendent of Public Health; provided that in counties not having a Superintendent of Public Health, the County Superintendent of Public Instruction shall be a member of such board. Such board shall select one of the members as chairman and shall administer and expend the funds allocated to such county under the provisions of this Act, subject to the right of the Board of County Commissioners to approve or reject any claim for payment out of the money allocated to such county."

"Section 3. The primary purpose of this Act is to supplement the funds which have or may hereafter be appropriated by the County Excise Boards of the various counties of the State of Oklahoma for the indigent of the various counties. The funds provided for by this Act shall be used for the purpose of providing food, clothing, fuel, medical and surgical necessities and other necessary supplies for the destitute unemployable citizens of this State, who are, and for a period of one year prior to the passage of this Act, have been bona fide citizens and actual residents in this State, who on account of age or other infirmity are now or may hereafter become unemployable, all as defined and provided by Articles 10 and 11, Chapter 35, Oklahoma Statutes, 1931. Provided, however, that no one family shall be allowed more than $10.00 in any one calendar month."

"Section 10. For the purpose of providing the funds for the State Board of Public Welfare to carry out the provisions and purposes of this Act for the remainder of the current fiscal year and the ensuing fiscal year to June 30, 1936, there is hereby appropriated out of any funds in the State Treasury to the credit of the General Revenue Fund, not otherwise appropriated, the sum of One Million Five Hundred Thousand ($1,500,000.00) Dollars; provided however, that from and after June 30, 1935, the State Board of Public Welfare shall not allocate any monies appropriated by this Act to any county of this State unless and until the County Excise Board of such county shall have levied an ad valorem assessment in such county of at least eight-tenths of one mill to obtain funds for the care and maintenance of the poor and indigent and the widows of such county, or unless and until a satisfactory showing is made to the State Board of Public Welfare, that such county is not financially able to make such levy and yet provide for the ordinary expenses of the county government."

The contention is made that the claim or requisition set forth in the information is not the subject of forgery under the laws of Oklahoma, and is wholly void, for the reason that the same was not identified and verified as is required by law, and is void for the reason that the same was not executed in the manner provided by law; that the purported signature of Fred D. Lowe, thereon, was made by rubber stamp, without his knowledge or consent is a nullity; that it is wholly void for the reason that it was not properly filed in the manner provided by law, nor was the same ever presented to, nor passed upon by the board of county commissioners of Oklahoma county, or any other proper board or officer as required by law, and that the county clerk was therefore wholly without authority to issue any warrant, cash voucher or other payment thereon.

The question of the legal efficacy of the instrument set forth in this information was passed upon by this court in the case of Moss v. Arnold, 63 Okla. Cr. 343, 75 P. 2d 491, 492, wherein the court held:

"A false instrument or writing, made out with intent to defraud, which is good on its face, may be legally capable of effecting the fraud, even though an inquiry into extrinsic facts or matters not appearing on its face would show it to be invalid, even if it were genuine; therefore, the forging of such an instrument of writing is an offense under the statute.

"Under the statute, an uttering of such instrument is the knowingly passing as true, or attempting to pass as true, such forged instrument with intent to defraud. Section 2125, St. 1931, 21 Okla. St. Ann. § 1577.

"In prosecution for uttering forged requisition on county welfare board, ostensibly issued to a needy person, held, instrument to be the subject of forgery within the statutory definition of forgery in the second degree."

In the opinion it is said:

"The entire requisition is copied into the information charging the uttering of the same as a false and forged instrument, with intent to defraud. It is an instrument of writing of no doubtful significance. It falls within the designation of 'or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency.' The instrument shows that it is of a character capable of effecting a fraud. Taken in connection with the receipt and the affidavit of the defendant Curnutt, shown thereon, there are sufficient extrinsic allegations to show that the instrument was susceptible of being used to defraud the county welfare board of Oklahoma county.
* * *

"The numerous authorities cited by counsel for petitioner show that to forge an instrument which upon its face is of no validity or binding force, does not constitute the crime of forgery. No authorities would seem necessary for so plain a proposition.

"There is no question but that an instrument, which is invalid and void upon its face, cannot be made the subject of forgery, but a false instrument, which is good on its face, may be legally capable of effecting a fraud, though inquiry into extrinsic facts should show it to be invalid, even if it were genuine; therefore, forgery of such instrument is a crime.

" 'Forgery' is defined by Blackstone to be:

" 'The fraudulent making or altering of a writing to the prejudice of another's rights.' 4 Bl. Comm. 247.

"Mr. Bishop says:

" ' "Forgery" is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability.' 2 Bish. Crim. Law, 8th Ed., § 523.

"From the definitions of 'forgery' as above stated, as well as from the statute, it will be seen that the essential elements of the crime are, the false making of an instrument in writing, apparently capable of effecting a fraud, together with a fraudulent intent.

"In an information for forgery or for uttering a forged instrument, or for passing the same, it is sufficient to charge that it is a forged writing, was uttered or passed with knowledge of the forgery, with an intent to defraud. Wilborn v. State, 26 Okla. Cr. 437, 224 P. 214.

"In the case of Diamond v. State, 57 Okla. Cr. 214, 46 P. 2d 966, defendant Diamond was charged with forging the name of Morton R. Harrison, to a claim for $242 against the Soldiers' Relief Commission. It was the contention of the defendant in this court on appeal that this relief claim could not be the subject of forgery. This contention was overruled. This court held that the instrument was the subject of forgery within the terms of the statute.

"In the case of People v. Ciralsky, 360 Ill. 554, 196 N. E. 733, the Supreme Court of Illinois held:

" 'Indictment charging forgery of grocery order ostensibly issued to needy persons by public welfare bureau held good as against motion to quash; there being sufficient allegations to show that instrument was susceptible of being used to defraud state.' And again: 'Forgery indictment need not allege that instrument forged, if genuine, would create legal liability.'

"In the case of Lurye v. State, 221 Wis. 68, 265 N. W. 221, the Supreme Court of Wisconsin held:

" 'Certificate of indebtedness issued by city, although unenforceable on account of defects in proceedings leading up to its issuance, could be subject of forgery, where carrying no evidence of invalidity on its face.'

"In the opinion it is said:

" 'The question for determination here is: Does the instrument in question upon its face appear to be good? The defendants point out many defects in the proceedings leading up to the issuance of this certificate. No tax was levied; the certificate was not signed by the comptroller; the city had exceeded its debt limit. It did not contain on its face a statement of the purpose for which it was issued.

" 'Section 62.12 (6) provides:

" ' "Funds; appropriations; debts. (a) City funds shall be drawn out only by authority of the council and upon order of the mayor and clerk, countersigned by the comptroller, if there be one. Each order shall specify the purpose for which it is drawn, and be negotiable. * * *

" ' "(c) No debt shall be contracted against the city nor evidence thereof given unless authorized by a majority vote of all the members of the council." * * *

" 'The certificate of indebtedness had the appearance of validity, and could therefore be the subject of forgery.'

"And see People v. McDonald, 53 Colo. 265, 125 P. 114; Norton v. State, 129 Wis. 659, 109 N. W. 531, 116 Am. St. Rep. 979.

"It is also contended that the said claim or requisition is void, for the reason that the same was not executed in the manner provided by law, in that the purported signature of Fred D. Lowe, placed thereon by rubber stamp without his knowledge or consent, is a nullity.

"On the face of said requisition appears the following:

" 'By order of County Public Welfare Board,

" '(Signed) Fred D. Lowe, Chairman of County Public Welfare Board.

" 'Attest: Coma Biewer, Secretary of County Public Welfare Board,

" 'Approved for Payment: Fred D. Lowe, Chairman of Board of County Commissioners Member of County Public Welfare Board.

" 'This requisition is not acceptable unless the above Schedule of Condition is filled in. Must be signed by two members.'

"It appears that more than two thousand requisitions, signed in the same way as requisition No. 2038, had been issued and paid when the one purporting to have been given to Willie McCullough was issued. All bore rubber stamp signatures of Fred D. Lowe.

"Our statute defines a 'signature' as follows:

" ' "The term Signature" includes any name, mark or sign, written with the intent to authenticate any instrument or writing.' Section 1791, St. 1931, 21 Okla. St. Ann. § 100.

"In 58 C. J. 729, it is said:

" 'A signature may be written by hand, or printed, or stamped, or typewritten, or engraved, or photographed, or cut from one instrument and attached to another. A signature lithographed on an instrument by a party is sufficient for the purpose of signing it, and it has been held that it is immaterial with what kind of an instrument a signature is made.'

"Again, on page 730, C. J., it is said:

" 'Facsimile signature of a party may be a genuine signature.'

"In the case of Costilla Estates Dev. Co. v. Mascarenas, 33 N. M. 356, 267 P. 74, the Supreme Court of New Mexico announced the following rule:

" 'Court clerk's signature by rubber stamp to indorsement of filing paper in cause not prohibited by general principles nor by Code 1915, § 1401.'

"And again in the same case, after quoting the New Mexico statute, it is said:

" 'This statute does not require the clerk to write his name; only that he sign it. Generally a signature, if adopted as such, may be printed, lithographed, or typewritten, as well as written. 33 Cyc. 443. The decisions there collected show that signatures not autographs are held sufficient to satisfy a variety of statutory and other requirements.'

"See, also, Tenement House Department v. Weil, 76 Misc. 273, 134 N. Y. S. 1062.

"The state's contention is that the requisitions were not invalid because Fred D. Lowe's signature was a facsimile.

"There can be no question but that officials of and persons in the county welfare board, the county clerk's office, and the county treasurer's office furnishing aid to relief claimants, depended upon the signatures of Fred D. Lowe as affixed to these requisitions, as having been duly authorized and adopted by Fred D. Lowe.

"The authorities support the state's contention, and we are of opinion that the facsimile signatures thereon were sufficient to authenticate the requisitions so approved including the instrument in question.

"It is also contended that one signature, that is, the secretary of the county welfare board, is not in compliance with the requirement that two members must sign.

"In Luyre v. State, supra, the Supreme Court of Wisconsin quoted this language, which was superimposed upon a forged certificate:

" 'This Certificate of Indebtedness shall not be discounted. This Certificate of Indebtedness if discounted will cease to be an obligation of the City of Superior.'

"The Supreme Court of Wisconsin, nevertheless, held this certificate subject to forgery, even though it had been discounted. In other words, the requirement superimposed on the face of the requisition, in the absence of express statute, could not be a condition of the contract or requisition.

"The schedule of condition is filled in; the balance in the relief fund is carried forward according to the requirement of the requisition.

"The claim was properly verified before Helen Nix, county clerk, and attested by the seal of the office, as shown by the copy of the requisition set forth in the information.

"It follows from what has been said that the information alleges all the essential elements of the crime of uttering a forged instrument, with intent to defraud, and gives to defendant full information of the nature and cause of the accusation against him, to which he is entitled under section 20, article 2 of the Constitution of the State, Okla. St. Ann. And, aside from any authority, we should hold the information good, since it plainly and with sufficient fullness follows the language of the statute upon which it is drawn."

In the case at bar we are of the same opinion as to the legal efficacy of the instrument in question. The overwhelming weight of authority on this question is in accord with the holding of the court in the case of Moss v. Arnold, supra.

The following text of 23 Am. Jur. Forgery, sec. 32, is supported by numerous authorities:

"The crime of forgery has been extended by statute, and to considerable extent by judicial construction, until it covers nearly every class of instruments known to the law as affecting private or public rights, including letters and indorsements. It is also apparently well settled that the alteration of an instrument in the form of a receipt is forgery if all the other elements necessary to constitute the offense are present. The courts have also ruled, with reference to whether a particular instrument is within a particular class so as to come within the operation of a statute defining the offense of forgery, that a receipt for money on account is an acquittance; that a bank deposit slip is evidence of debt; that a railroad ticket or pass is or may be an instrument purporting to create a liability, that a request for the delivery of personal property, with a promise to return it, is a writing obligatory; that a re-quest or direction for the delivery of goods over which the ostensible writer has no control, with an undertaking to pay therefor, is a writing purporting to create a pecuniary liability, or a writing to the prejudice of another's right, or is an 'order' for property, but that an authorization to solicit and receive donations to a specified purpose is not an order for money or property; that a testimonial of character is a subject of forgery; that a letter of introduction representing one as the friend, etc., of the person whose name is signed to it is a representation of the sentiments, opinions, etc., of another. Generally, however, the substance of the instrument as distinguished from its form is determinative of whether it may support a charge of forgery; and the question most often arising on the character of the instrument relates not so much to the matter of generic classification as to the more specific inquiry whether the instrument imports or embodies some one or more of the other elements of the crime, especially falsity and, on the assumption of genuineness, efficacy to affect the rights of others."

Section 35 is in part as follows:

"Thus, it has been held that it is sufficient to render one guilty of forgery if he procures its commission or is present and aids and abets another in procuring it." Cit-

ing Cudjoe v. State, 12 Okla. Cr. 246, 154 P. 500, L. R. A. 1916F, 1251.

It appears from the record that the money involved in this case, allocated to Oklahoma county to be disbursed from the time Senate Bill No. 1 became operative, March 9, 1935, was placed in a fund to itself, and that no other fund was commingled with this particular fund until after June 30, 1935. In other words, the law provided for the county to contribute to the fund after June 30, 1935. There was no provision of law for money to be furnished by the county during the time involved, and the evidence shows that no county money was allocated with which to pay these requisitions.

The record shows that under Senate Bill No. 1, Laws 1935, the State Examiner and Inspector promulgated rules and regulations for the distribution of money allocated to the various counties, including Oklahoma county, and that the procedure followed by the Oklahoma County Welfare Board, complied with the same and created a debt and obligation against the fund when the requisition was issued and merchandise furnished to the poor by the merchants as shown by state's exhibit 1, as well as the other exhibits in the case.

Appellant, R. V. Boyer, as the director of the Oklahoma County Welfare Board, was charged with the duty and responsibility of disbursing this money for the specific purpose it was allocated to Oklahoma county, and no claim would be allowed without his approval. The merchants furnishing the groceries and supplies as called for by the requisitions, knew and were required to make claims and file them with the county clerk, in order to receive payment for the same from the County Welfare Board fund for merchandise and supplies so furnished by them.

It will be observed that, under the wording of our statute, the instrument need not in fact create any liability. The language used is "or other evidence of debt or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited; with intent to have the same uttered or passed." Whether or not the claim was paid or not paid, or whether the payment was made in strict compliance of the law or was irregularly paid, does not constitute any defense for the crime of forgery in the second degree, as charged in the information.

To be within the literal reading of the statute the false instrument may not in fact be such that, if true, it would have created any liability whatever; it is sufficient if it be such an instrument the design or meaning of which is to create such a liability, though in fact it may not be so. State v. Sherwood, 90 Iowa, 550, 58 N. W. 911, 48 Am. St. Rep. 461.

Where there is a present intent to defraud, the crime of forgery is complete, whether the expected advantage is to accrue from it to the defendant personally, or to another, or whether that purpose is successfully attained or not. State v. Cross, 101 N. C. 770, 7 S. E. 715, 9 Am. St. Rep. 53.

In People v. Whitaker, 127 Cal. App. 370, 15 P. 2d 883, it is held that the crime of forgery is complete when one either makes or passes a false instrument with intent to defraud.

In Norton v. State, 129 Wis. 659, 109 N. W. 531, 116 Am. St. Rep. 979, it is said:

"It is immaterial that the instrument is not available for reasons not appearing on the face of it. If it is falsely made with intent to defraud and apparently sufficient on

its face it is a forgery, though other steps were required to be taken, if it were genuine, to perfect it in plaintiff in error's hands. This is upon the ground that an instrument, apparently valid on its face, is only voidable, if genuine, by impeaching it directly. And so here, if plaintiff in error had passed this check, which is complete and valid on its face, its invalidity would be made to appear enly by extrinsic evidence impeaching its apparent validity. Under such circumstances the instrument, if falsely made with intent to defraud, is held to be a forgery because it purports to be good. Commonwealth v. Costello, 120 Mass. 358."

The Supreme Court of Colorado, in People v. McDonald, 53 Colo. 265, 125 P. 114, held that:

"Where a person attempted to have cashed a forged check payable to the order of another, the fact that the check was not indorsed did not render the act any less forgery, and the exclusion of the check from evidence on the ground that it had no legal efficacy and was not the subject of forgery was error."

And see McCoy v. State, 161 Ark. 658, 257 S. W. 386.

In the case of State v. Curley, 13 Okla. Cr. 25, 161 P. 831, the trial court held that because the names indorsed on the back of the check were not pleaded in the information there was a fatal variance between the proof and the allegations of the information. On appeal this court held:

"This was error because the crime charged was that the forged check had been uttered and passed, and the only function that the names of the indorsers on the back of the check performed was to furnish evidence as to the identity of the parties who uttered and passed the check."

In Taylor v. State, 65 Okla. Cr. 432, 88 P. 2d 665, this court held:

"Under forgery statute, if any fraudulent advantage accrues to accused, or any injury is suffered by person

imposed on, it is sufficient for conviction, without necessity to prove that money or property was obtained thereby."

In the case at bar, the evidence shows or tends to show that when appellant, Boyer, issued requisition No. 1, and the ten other exhibits which were filed by M. H. Curnutt, he was acting conjointly with his codefendant, Curnutt, the actual utterer of the instruments, with a common purpose and fraudulent intent to effect a fraud upon the County Welfare fund of Oklahoma county, and it is undisputed that the name of Willie McCullough, as claimant on said instrument, exhibit No. 1, was a forgery, and according to the evidence in the case, appellant and his codefendant did, by uttering and passing to the county clerk of Oklahoma county, a forged instrument as charged in the information, effect a fraud knowingly as was intended by them.

The essence of forgery is the making of a false writing with the intent that it be received as the act of another than the party signing it.

In the case of Grayson v. State, 12 Okla. Cr. 226, 154 P. 334, it is said:

"Where the evidence tended to prove that certain persons entered into a conspiracy to forge a deed for the purpose of defrauding another person of the land therein described, the profits to be a division of the land or a division of the proceeds, anything said or done in furtherance of the conspiracy by any of said conspirators, between the execution of the deed and the accomplishment of the further purpose of the conspiracy, is admissible in evidence against a coconspirator on a prosecution for the forgery."

It follows, from the foregoing review and the well-settled rule announced in the authorities cited, that the information alleges all of the essential elements of the

crime of uttering a forged instrument with intent to defraud, and the trial court did not err in overruling the demurrer to the information. It follows that the motion to quash and the demurrer thereto were both properly overruled.

The second proposition urged by counsel for reversal of the judgment is:

"That the court erred in overruling the appellant's objections to the introduction of testimony on behalf of the state consisting of requisitions and records relating thereto."

In support of this proposition it is urged that the court committed reversible error in admitting evidence tending to show the commission of other offenses similar to the offense charged in the information.

In appellant's brief it is said:

"The state, at the trial, in order to obtain a conviction attempted to and did introduce evidence, over the objections of the defendant in an attempt to show some scheme or plan to connect this defendant with the crime as charged, to wit, forgery, and although this evidence may tend to create a suspicion of guilt for the commission of some other crime, yet, your defendant submits that this evidence was wholly incompetent, irrelevant and immaterial and influenced the minds of the jurors and that the same is not admissible under any rule of evidence."

It appears from the record that eleven requisitions, Exhibits 1 to 11, both inclusive, were filed by M. H. Curnutt, codefendant, and paid for by one voucher.

Appellant, R. V. Boyer, director of the Oklahoma County Welfare Board, wrote each of the requisitions, and signed the name of the secretary, Comanan Biewer; the initials R. V. B. on the requisitions under the secretary's name. It appears that these requisitions were issued to

persons living at widely divergent places in Oklahoma City and county, yet all eleven managed to get into the hands of H. M. Curnutt in the Tower Drug Store, and it appears that these requisitions were issued approximately the same time, and came to said drug store approximately the same time. It also appears not only were the requisitions written by R. V. Boyer, but they were posted to the yellow card by him, and in his own hand writing. The persons by whom the claims purported to have been made and signed testified that they never signed the claims or received said requisitions nor authorized any one else to sign or get them.

The requisition which is the basis of this prosecution is state's Exhibit "1", and purports to have been issued to Willie McCullough, the other ten requisitions which went to M. H. Curnutt, in the Tower Drug Store, are numbered 2030 to 2040, both inclusive.

The claims and requisitions issued thereon being fabricated instruments, similar to the one set forth in the information in every respect, except in regard to signature of claimants, they were admissible in evidence as a part of the res gestae, and as forming a part of a single scheme or fraud whereby, voucher No. 193 ($102) on the county treasurer of Oklahoma county, payable out of the State Public Welfare fund of said county was issued, as alleged in the information.

It is also urged that the court erred in admitting in evidence additional requisitions which were issued on relief cards by appellant, Boyer, and where the claimants named thereon denied their signatures on said requisitions and also denied that they had ever received the requisitions issued in their names and the proof showed or tended to show that the same were forgeries.

We do not deem it necessary to set forth these instruments or detail the evidence showing or tending to show that they were forgeries.

The question presented has been passed upon by this court in numerous cases.

In the case of Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, 844, Ann. Cas. 1916A, 689, it is said:

"Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or to connect the defendant with the commission  of  the  crime charged."

In State v. Rule, 11 Okla. Cr. 237, 144 P. 807, it is held:

"As a general rule, evidence of other offenses, though of the same nature, is not admissible for the purpose of showing that the defendant is guilty of the particular offense charged. To this rule, however, there are well-settled exceptions. Those applicable to the question presented on the record in this case are as follows:

"(a) Evidence of other offenses similar to that charged is relevant and admissible, when it tends to prove some element of the one charged, as when it shows or tends to show guilty knowledge or intent in the commission of the offense charged.

"(b) Evidence that tends directly to prove the defendant's guilt is not rendered inadmissible because it proves or tends to prove him guilty of another and distinct offense.

"(c) Evidence of a different offense from the one charged is admissible when both offenses are so closely linked or connected as to form a part of the res gestæ.

"(d) Evidence of other offenses is competent to prove the specific offense charged when it tends to establish a systematic scheme or plan embracing the commission of two or more offenses so related to each other that proof of one tends to establish the other, or to connect the defendant with the commission of the offense charged.

"(e) In support of an information, charging the filing of a false claim with intent to defraud the state, and that by such false pretense the defendant did obtain from the State Auditor a warrant for the amount of the claim, evidence is admissible of other instances when he did the same thing as tending to show guilty knowledge or intent, and that the offense charged was a part of a plan or scheme to cheat and defraud the state."

In Herndon v. State, 16 Okla. Cr. 586, 185 P. 701, 702, it is held:

"Evidence of offenses of similar nature committed by an accused, other than the specific offense for which he is being tried, may be properly admitted in evidence to show the intent of the accused, notwithstanding such evidence tends to prove accused guilty of other and distinct offenses; the field of operation of such evidence to be confined by the instructions of the court to the jury alone to establish intent or some element of the offense charged."

In Reniff v. State, 53 Okla. Cr. 448, 13 P. 2d 592, this court said:

"It is also argued that the court erred in admitting testimony of other offenses. There was testimony that defendant at about the same time under similar circumstances passed several other forged checks in the same manner as the check, and for approximately the same amount in this case. This was admitted under the well-settled rule that proof of other offenses of similar character, and near in point of time, is relevant and admissible to show a system of criminal action and the knowledge and intent of the accused and to show the act charged was not an inadvertence. The testimony was clearly competent. State

v. Rule, 11 Okla. Cr. 237, 144 P. 807; Harrell v. State, 43 Okla. Cr. 278, 278 P. 404."

The text of 23 Am. Jur., Forgery, Sec. 59, is in part as follows:

"The legal inference that a person is presumed to intend the natural consequences of his acts, which is sometimes conclusive, is not necessarily of itself of much force in cases of forgery or of uttering forged paper. For this reason, it is generally held that proof of similar acts of forgery or of uttering is admissible as bearing on the question of the intent with which the act of forgery or uttering of forged paper for which the defendant has been informed against was committed. The fact that the defendant was under indictment for the forgery of some of the instruments so admitted in evidence does not affect their admissibility in evidence."

We are of opinion that evidence of other similar transactions, whether before or afterwards, was relevant to the issue, and was not made inadmissible by reason of the fact that it would tend to prove appellant guilty of offenses other than that charged in the information. It was clearly admissible for the purpose of proving guilty knowledge or the intent with which the act charged was committed. They were acts of appellant in a continuous series of transactions and were precisely of the same character as the act for which he was being tried, and tended to show that appellant fabricated certain other requisitions of a like character. It may be regarded as settled that where the offense charged is so connected with the other offenses sought to be proved, evidence of the latter may be given to show the character of the former. It follows that the court did not err in its rulings in the admission of the evidence objected to.

Upon a careful consideration of the entire record we see no reason to doubt that this conviction was fully warranted by the evidence.

A conspiracy to defraud is necessarily or usually made up of a series of facts and circumstances, and it is sufficient if the facts and circumstances shown in evidence are finally connected so as to make a prima facie case of conspiracy.

A conspiracy, leading up to the commission of the crime charged need not be established by direct evidence, but may and generally must be proved by a number of independent acts, conditions, and circumstances. The very existence of a conspiracy is generally a matter of inference deduced from certain acts of the persons accused, done in pursuance of an apparently criminal or unlawful common purpose. Mathews v. State, 19 Okla. Cr. 153, 198 P. 112.

This case was fully briefed, and was ably argued by counsel for appellant at the time of its submission. After careful examination of the voluminous record, comprising more than 800 pages, this court has given careful consideration to the propositions urged as reasons for a reversal of this judgment, and the authorities cited in support thereof, and a consideration of the argument made fails to convince this court that any error occurred from the inception of this prosecution to its close, prejudicial to the substantial rights of appellant.

Upon consideration of the whole case we are convinced that appellant had a fair and impartial trial, according to the forms of law. The judgment of conviction must therefore be affirmed. It is so ordered.

BAREFOOT and DAVENPORT, JJ., concur.